PAGE *v.* SYMONDS *& a.*

The right of burial in a public cemetery is not an absolute right of property, but a privilege or license to be enjoyed so long as the place continues to be used as a burial-ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires.

PETITION, addressed to a justice and by him adjourned into the law term for a temporary injunction pending a bill in equity for a perpetual injunction against the removal of the remains of the plaintiff's father, mother, and brother from a public cemetery in the town of Lisbon.

*S. B. Page* and *Ray, Drew, Jordan & Carpenter*, for the plaintiff.

*Bingham, Mitchells & Batchellor*, for the defendants.

CLARK, J. The law requires every town to provide a suitable public cemetery, and subjects it to such regulations as the town may establish. When there is a public necessity for the establish-

3*

ment of a new cemetery, and land necessary therefor cannot be obtained in a suitable place at a reasonable price by contract with the owner, the selectmen, upon petition therefor, may lay out a cemetery and appraise the damage to the land-owner. All proceedings upon such petition, and the return and record of such proceedings, and the remedy of a land-owner, if he is dissatisfied with the location or the damages awarded, are the same as in cases of highways laid out by selectmen. When there is a public necessity for the discontinuance of a cemetery and the removal of the remains buried in it, it may be discontinued upon like notice, proceedings, return, and record, and subject to the same right of appeal, as in case of the discontinuance of highways. And the selectmen may, prudently, and with all proper care and attention, and at the expense of the town, remove the remains from the discontinued cemetery to a suitable cemetery, and may carefully remove all monuments, gravestones, and other appurtenances with as little injury as the nature of the case will admit, and at the expense of the town. In case of injury to any such monument, gravestone, or other appurtenance, the town pays all damages; and all proceedings relating to the removal of remains and other things, and for obtaining increased damages, are the same as in the case of the discontinuance of highways, and subject to the same right of appeal. The removal is made to any public cemetery in the town, and in such unoccupied part of it as is designated by the nearest surviving relatives of the deceased. No cemetery is discontinued or removals made unless the town by a three-fourths vote first vote in favor of a discontinuance or removal. G. L., *c.* 49, *ss.* 1–4.

The defendants are the selectmen of Lisbon. At a legal town-meeting, held April 28, 1883, the town voted to discontinue the cemetery where the plaintiff's relatives are buried, and to remove the bodies buried therein. The plaintiff was present at the meeting and spoke in opposition to the measure, which was carried by a vote of two hundred to two hundred and fifty in the affirmative and about fifty in the negative. The cemetery contains one acre of land, conveyed to the town of Lisbon in 1846 in trust for a public burial-place. It is located in Lisbon village, within ten rods of the B., C. & M. Railroad. In 1846 the village was much smaller than now, and the railroad was not built. About 1863 dissatisfaction began to be expressed as to the size and situation of the cemetery, and the unsuitable character of the soil, a part being ledgy and a part wet. It was apparent that enlarged and better accommodations would soon be needed, and in 1867 a new cemetery, containing eight acres, was established upon a site suitable for the purpose and further from the village. Since that time the new cemetery has been chiefly used as a place of burial, only six interments having been made in the old cemetery during the last thirteen years. Previous to the vote of discontinuance, about one

hundred and twenty-five bodies had been removed from the old to the new cemetery, leaving about fifty graves from which the bodies had not been removed, all of which have since been removed except four, which are soon to be removed, and the bodies of the plaintiff's deceased parents and brother, buried in August, 1865, March, 1866, and October, 1882. In consequence of the removals from the old cemetery and its disuse as a place of burial, and the general conviction that its discontinuance was only a question of time, the fences had been allowed to decay, bushes had grown up, and the ground had become uneven, so that as a place of burial for the dead it was regarded as not creditable to the town.

The plaintiff claims that there was no public necessity for the discontinuance of the cemetery, that he has not received legal notice of the contemplated removal of the remains of his relatives, and that there have not been such proceedings, return, or record, on the part of the selectmen as are required by law, so that he could be heard or his rights protected. After the vote of discontinuance, the plaintiff was requested by the selectmen to select a spot in the new cemetery, and remove the bodies of his deceased relatives. No record or return of the action of the town has been made, except the record of the meeting kept by the town-clerk in the records of the town. The plaintiff also claims that no law authorizing a discontinuance of the cemetery existed when his mother and brother were buried in 1865 and 1866, and that an application of the statute authorizing such discontinuance to this case is in conflict with the provision of the constitution of the United States, that no state shall pass any law impairing the obligation of contracts.

In determining whether an injunction shall issue, it is necessary to consider what rights of the plaintiff are imperilled. There is no allegation of title or ownership in the soil of the cemetery, nor is there any suggestion of any right acquired by purchase or secured by express contract. The facts, so far as they appear, furnish no evidence of any right except such as may be incident to the right of interment in a public cemetery. Such right of burial is not an absolute right of property, but a privilege or license, to be enjoyed so long as the place continues to be used as a burial-ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires. It is a right of limited use for purposes of interment, which gives no title to the land. *Craig* v. *First Presbyterian Church of Pittsburgh*, 88 Penn. St. 42; *Windt* v. *German Reformed Church*, 4 Sandf. Ch. 471. A grant of a lot in a cemetery is said to be analogous to a grant of a pew in a meeting-house, and the right of burial in a public burying-ground in some respects resembles the right of pew tenancy. *Jones* v. *Towne*, 58 N. H. 462; *Sohier* v. *Trinity Church*, 109 Mass. 1, 21; *Kincaid's Appeal*, 66 Penn. St. 411.

Strictly speaking there is no right of property in a dead body.

2 Bl. Com. 429; *In re Beekman St.*, 4 Bradf. 503; *Weld* v. *Walker*, 130 Mass. 422; 4 Am. L. Rev. 57. But while it is not property in the ordinary sense of the term, it is regarded as property so far as to entitle the relatives to legal protection from unnecessary disturbance and wanton violation or invasion of its place of burial. The plaintiff, notwithstanding he is neither the owner of the soil of the cemetery nor of the remains of his deceased relatives interred there, may nevertheless be authorized to invoke protection against unnecessary desecration of their place of burial. *Meagher* v. *Driscoll*, 99 Mass. 281; *Pierce* v. *Swan Point Cemetery*, 10 R. I. 227; *Smith* v. *Thompson*, 55 Md. 5; *Beatty* v. *Kurtz*, 2 Pet. 566, 584; Cool. Torts 239.

But it does not appear that any injury or indignity to the remains of the plaintiff's dead relatives is intended. Their place of burial has been practically abandoned as a place of interment for several years, and regarded as unfit for that purpose. A more suitable location has been secured as a public burying-ground; and after the removal of three fourths of the bodies from the old cemetery, the town voted to discontinue it by a majority of more than three fourths of those present and voting at a meeting duly notified for that purpose. Since then all the bodies have been removed except those of the plaintiff's father, mother, and brother, and four others, for whose removal preparation is already made. The fences have gone to decay, the surface of the ground is broken and uneven, the lot is unenclosed and unprotected, and no longer fit for its former use as a resting-place of the dead. Under such circumstances a removal of the remains to a suitable place of interment would seem to be an act of respect to the ashes of the dead. It certainly cannot be regarded as wanton desecration. This is the extent of the threatened injury, and it is not sufficient to entitle the plaintiff to an injunction.

The right to provide for the establishment and discontinuance of public cemeteries and regulate their use is a public right, within the control of the legislature, which it may exercise directly, or entrust to local municipal action under such restrictions as are necessary for the protection of public and private rights. The town of Lisbon was authorized by statute to discontinue the old cemetery and remove the remains buried therein, whenever a public necessity existed therefor, and three fourths of the voters present and voting at a legal meeting called for that purpose should vote in favor of such discontinuance. G. L., *c.* 49, *ss.* 3, 4. The power to discontinue when there is a public necessity therefor, necessarily includes the power to determine whether such public necessity exists. Cool. Con. Lim. 39–43. By a three-fourths vote, at a meeting duly notified and holden for that purpose, the town voted to discontinue the cemetery. This was a legitimate exercise of the authority conferred by the legislature. Being an exercise of the police power of the state to which all contracts and

all rights are subject, the statute is not in conflict with the contract clause of the constitution of the United States. Cool. Con. Lim. 574.

This cemetery could be discontinued by the town as if it had been laid out by the selectmen. The public right of burial in it, acquired by contract with the land-owner, could be abandoned as if it had been acquired by an exercise of the right of eminent domain without his consent, upon a petition to the selectmen. If the town cannot obtain a suitable lot at a reasonable price by contract with the owner, the selectmen can lay out a cemetery as they lay out a highway. And as a cemetery may be laid out in such a case as a highway is laid out, so it may be discontinued as a highway may be discontinued. As the power of relinquishing the public right of way in certain cases is vested in the town, so the power of releasing and abandoning the public right of burial in this cemetery is vested in the town. The notice, proceedings, return, and record required, and the right of appeal given in this case, are the same as in the case of a discontinuance of a park, common, or highway by a town. The plaintiff contends that the proceeding for discontinuance must be such as to give him notice of a judicial proceeding, an opportunity to be heard, and an opportunity to appeal; that this being his right under the statute, the power of discontinuance is not conferred upon the town, and that the cemetery could be discontinued only upon a petition to this court. But as upon such a petition he would not have an ordinary appeal, it is evident that the right of appeal given by the statute is not a right of appeal from a judgment or vote of discontinuance; and the plaintiff does not suggest any proceeding in which he could have such an appeal. The statute authorizing the laying out and discontinuance of cemeteries refers to the statute of highways by comprehensive terms, which show that no other notice, proceeding, return, or record is required, and no other right of appeal is given, than in the case of the discontinuance of a highway by a town.

It does not appear that the town or the defendants have exceeded, or intend to exceed, their authority, or have done or propose to do anything except in a legal and discreet manner, and with due regard for the sensibilities of all persons interested in the substitution of a suitable public cemetery for an unsuitable one. An injunction would prevent the doing of that which ought to be done, and which it is the duty of the defendants to do.

*Injunction denied.*

SMITH, J., did not sit: the others concurred.