174 So. 774

**ALOSI et al. v. JONES et al.**

**6 Div. 106.**

Supreme Court of Alabama.

May 20, 1937.

Rehearing Denied June 17, 1937.

. Wm. S. Pritchard and Aird & Fox, all of Birmingham, for appellants.

W. J. Wynn, Clarence Mullins, and Harvey T. Deramus, all of Birmingham, for appellees.

BOULDIN, Justice.

The bill was filed to enjoin the enforcement of an ordinance or order of the city commission of Birmingham forbidding burials in "Pine Haven Cemetery."

The validity of the ordinance is challenged on the ground that it is arbitrary, unreasonable, oppressive, discriminatory. The appeal is from a final decree denying relief.

The pertinent facts, without substantial dispute, are briefly these: In 1904 the owners of a parcel of land, near 5 acres (which had been surveyed into blocks, but then outside the corporate limits of Birmingham), laid off and platted such parcel into cemetery lots and pass-ways, and caused the same to be filed and recorded, dedicating same to use as a public cemetery for colored people.

Lots were sold and burials begun on the property, and during the next four to five years, a number of burials, estimated from one hundred and twenty-five to two hundred, were made in this cemetery.

Further burials were then discontinued, and it is agreed no body has been buried there since 1909.

The property was taken into the city limits about 1910.

In 1934 application was made to the city commission to resume operation of the cemetery for purposes of further burials. This request was at first granted, but soon thereafter and 'before further interments, on application of citizens in the community, the matter was further investigated, the former action rescinded, and further burials prohibited.

During the period of a quarter of a century between discontinuance of the use of the property for interment, and these proceedings of 1934, the cemetery and the graves of the dead were much neglected, grass, briers, and small trees grew over the same. In later years the passerby on the street along the east side of the cemetery would scarcely notice any evidence of a cemetery, except for one or more monuments. On entering upon the premises, many sunken graves can be located. Whether all could be found is questionable. Some remains, the exact number not known, were taken up by kindred and removed to other burial grounds.

Meantime adjoining and neighboring properties were purchased for residence purposes, residences built thereon, and occupied by white families. One of these is an expensive residence, north of and 200 and 400 feet from the north boundary of the property. A number of these are located on a street some 900 to 1,500 feet distant, but it appears some of the homes face and are in sight of the cemetery and near routes of funeral processions to the cemetery. Evidence tends to show such residences, as well as near property not built upon, would be less desirable and less valuable, if the cemetery were reopened for burial purposes.

It was averred in the bill, and on evidence tending to sustain it, the trial court found that no question of protection to the public health is involved.

Under its police power the state may provide for the *establishment* and *discontinuance* of *cemeteries*, and *regulate their use*. This power may be delegated to municipalities within their corporate limits or police jurisdiction. Bryan v. Bir-

mingham, 154 Ala. 447, 45 So. 922, 129 Am. St.Rep. 63; Laurel Hill Cemetery v. City and County of San Francisco, 216 U.S. 358, 30 S.Ct. 301, 54 L.Ed. 515; 11 C.J. pp. 53, 54, § 2.

By statute, municipalities in Alabama are empowered to establish, own, and operate municipal cemeteries, "and to regulate or prohibit the establishment or use of private cemeteries within the police jurisdiction of a city or town elsewhere than in the city or town cemeteries." Code 1923, § 2041.

Statutory provision is now made for the establishment of public rural cemeteries by public authority. Code 1923, §§ 91–102.

The city of Birmingham is invested by statute with the full police powers of the state within the field of municipal government. Gen.Acts 1915, p. 296; Gilchrist Drug Co. v. Birmingham, ante, p. 204, 174 So. 609.

City ordinances and regulations on subject-matter within the scope of the city's police powers are presumptively valid. They are subject to attack on the ground that they are arbitrary, unreasonable, and oppressive, in that they are destructive of some personal or property right of the citizen adversely affected thereby without any basis of reason or justice, viewed in the light of the ends for which the police power exists.

The city authorities, the governing body chosen for the purpose, with full opportunity to ascertain the facts, are charged with the responsibility of determining the propriety of measures within the scope of their police powers. The courts cannot invade this field. To do so is to enter the field of law making.

Hence, the rule that the burden is on the party assailing the city ordinance to show by clear and convincing evidence that there has been such arbitrary, unreasonable, oppressive action as to constitute a clear abuse of power, tantamount to action outside the police power. It is often stated that if, under all the conditions, reasonable men may differ as to the occasion for such action, the same will not be disturbed. Gilchrist Drug Co. v. Birmingham (Ala.Sup.) 174 So. 609.[1] Birmingham v. Leo A. Seltzer, Inc., 229 Ala. 675, 159 So. 203; Leary v. Adams, 226 Ala. 472, 147 So. 391; Birmingham v. Louisville & N. R. Co., 216 Ala. 178, 112 So. 742; Bryan v. Birmingham,

154 Ala. 447, 45 So. 922, 923, 129 Am.St. Rep. 63.

Appellant argues that the citizen has an inherent property right to dedicate his lands to cemetery purposes, sell lots and operate same as a private enterprise, and that any interference therewith is arbitrary and oppressive unless the public health is or may be endangered thereby.

The argument has some support in the following excerpt from Bryan v. Birmingham, supra: "And that it [the city] cannot prohibit the owner from devoting his land to cemetery purposes in a sparsely settled locality, although within the corporate limits or police jurisdiction, there can be no doubt, unless the burials are calculated to impair the public health."

This expression must be considered in the light of the particular case.

The case of Kingsbury v. Flowers, 65 Ala. 479, 39 Am.Rep. 14, quoted in the Bryan opinion related to a private cemetery for use of the owner and others by his permission. It was held not per se a nuisance which neighbors or the public could enjoin, unless affirmatively shown irreparable injury will result. In the Bryan Case it is further said: "But the health and *well-being* of the city is to be the prime consideration in attempting to regulate the burial of the dead." (Italics supplied.)

In holding the proof in the Bryan Case did not make out a case of arbitrary abuse of power, other matters than public health were noted.

In Bessemer Land & Imp. Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 567, 56 Am.St.Rep. 26, Mr. Justice Haralson, the writer of the Bryan Case, took note of cases which have, "Grown out of the removal of the dead from one place to another, for purposes, as claimed, of health, convenience or the better care, preservation and ornamentation of these burial places," and quoted with approval from Page v. Symonds, 63 N.H. 17, 56 Am.Rep. 481, dealing with a lot in a public cemetery, the following: "Such right of burial is not an absolute right of property, but a privilege or license, to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires."

In the later case of Kerlin v. Ramage, 200 Ala. 428, 76 So. 360, L.R.A.1918A, 142, con-

---

[1] Ante, p. 204.

sidered by the full court, the statement last above quoted was quoted with approval, also the following from Anderson v. Acheson, 132 Iowa, 744, 110 N.W. 335, 9 L.R.A. (N.S.) 217: "The courts quite generally hold \* \* \* that the purchaser of a lot in a public cemetery, though the deed be absolute in form, does not take any title thereto. The mere privilege or license to make interments in the lot so purchased, exclusive of all others, is all that is acquired thereunder."

The obvious reason for this holding is that the owner and proprietor of a public cemetery as matter of law cannot convey any greater right or title, because of municipal authority to discontinue the use of the ground for burial purposes.

Our own cases, therefore, as well as authority elsewhere, fully settled the doctrine that the owner of property within the corporate limits of a city has no unqualified right to dedicate the. property to purposes of a public cemetery. This is not one of the incidents of property to be exercised as a matter of property right unless a nuisance results therefrom.

The police power is not limited to the protection of .public health, although this is one of the fields in which it is most frequently applied.

The public convenience, and all those matters pertaining to the public well-being, usually covered by the term public welfare, presents a wide field for the exercise of the police power other than the public health.

There is no sound reason why such powers should be segregated and limited in dealing with burials and public burial grounds.

We are not impressed that the quoted expression from Bryan v. Birmingham, supra, relied upon by appellant is to be construed as holding otherwise. Taking the context, other expressions in the same opinion, as well as principles recognized by the writer in other cases, the language employed should be limited to the case before the court, a sparsely settled community wherein the matter of the public health was deemed the only occasion for the exercise of the police power.

Taking up the case before us, we need not concern ourselves with the graves now upon the ground, the right of the living to have the graves of their dead respected and undisturbed. The right and power of the municipality to cause removal under some conditions is unquestioned.

But here the only question is the power of the city to forbid reopening this old cemetery to future burials, etc. The power to discontinue further burials, leaving undisturbed the graves on the ground is as plenary as control over the location and opening of cemeteries. 11 C.J. p. 29, cases note 29.

Stress is laid on the recognized principle that property owners acquiring their holdings pending the use of the premises for cemetery purpose have no standing in equity to disturb the status quo.

It would not follow that where persons have acquired property and built their houses under the existing status, the city may not consider the injurious effects which may result from a change of status, such as reopening the ancient cemetery to further burials, etc. Complainants' demands are asserted as property rights. It would be anomalous to hold these have no relation to property rights of others.

On the question of discrimination in permitting the continued operation and use of two other cemeteries within the same section, it is sufficient to say the conditions are by no means shown to be the same. Well-kept cemeteries in use for burial purposes are on a different footing from the situation here. Moreover, the fact of adequate burial grounds may be considered by the commission in allowing or disallowing the opening of this property to further burials.

Appellants complain that the tract having been dedicated to cemetery purposes, no other use can be lawfully made of the portion not covered by lots with graves thereon. When the city, in the exercise of lawful authority discontinued the use of such grounds for burial purposes, this ipso facto restored the property to other purposes not inconsistent with the subsisting burial rights accompanying lots occupied by graves. What these are, in view of the conditions shown, is not before us.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.