This is an appeal from a judgment of the Montgomery County Circuit Court denying declaratory and injunctive relief. The plaintiffs, Mr. and Mrs. J.J. Martin, Mr. W.J. Williams, and Mr. and Mrs. Charles Spears, are taxpayers in the City of *Page 1182 
Montgomery. They originally filed this suit against city councilman Joe Reed and the City of Montgomery (City) to prevent the waste and misuse of city funds in the construction of a sidewalk along the south side of Carter Hill Road in Montgomery. Their complaint alleged that the proposed sidewalk would lessen property values in the neighborhood, would lead to an invasion of their privacy, and was unnecessary. In amendments to the complaint, the plaintiffs also alleged that defendant Reed would receive personal gain from the construction of the sidewalk, thereby creating a conflict of interest which would void the construction contract. An additional amendment alleged that the defendant City had failed to adopt an ordinance authorizing the construction project, in violation of Code 1975, § 11-48-5 (a).
In 1983, the plaintiffs had brought suit against these same defendants in federal district court when the City sought to use federal funds to construct the sidewalk. Martin v. UnitedStates Department of Housing and Urban Development, No. 82-252-N (M.D.Ala. 1983) (unpublished opinion). The federal district court granted the injunction the plaintiffs were seeking and prohibited the City from spending any funds on the construction project. When the present suit was filed, the City filed a motion for clarification of the court's order. The court responded by ruling that the injunction that had been issued only prohibited the City from spending federal funds on the project and did not prohibit the expenditure of City funds to construct the sidewalk.
On February 1, 1985, after taking testimony and reviewing the depositions and documents introduced into evidence, the trial court issued an order denying the injunctive relief sought by the plaintiffs. The court found that the City officials had not acted in an arbitrary or capricious manner in deciding to construct the sidewalk and allowed the City to proceed with the construction. The plaintiffs appeal from this judgment and raise several issues for review.
The plaintiffs' initial contention is that the trial court should have given collateral estoppel effect to the federal court's ruling that the decision to fund the sidewalk construction was made arbitrarily and capriciously. They argue that since the same issue was litigated in the previous suit, its relitigation should have been precluded.
Collateral estoppel, also known as issue preclusion, is available as a defense to relitigation of an issue in a subsequent suit between the same parties which is not on the same cause of action. See, Conley v. Beaver, 437 So.2d 1267,1269 (Ala. 1983). In the case of Parklane Hosiery Co. v. Shore,439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court also sanctioned the use of collateral estoppel by a plaintiff in a subsequent suit to prevent the defendant from relitigating a previously decided issue. It is in this "offensive" manner that the plaintiffs wanted to utilize the doctrine of collateral estoppel in the trial court. However, before the doctrine of collateral estoppel can be used in either the "offensive" or "defensive" manner, three elements must be present: (1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment.Conley, supra. For the reasons set forth below, we do not believe that the plaintiffs satisfied even the first of the elements necessary for collateral estoppel to operate.
In the prior federal court suit, the plaintiffs were seeking an injunction to prevent the same defendants from spending any federal funds to construct the sidewalk. In that suit, the federal district judge had specific regulations to review in deciding whether the City could utilize federal funds to construct the sidewalk. Before a city can utilize federal Community Grant funds on a construction project, the construction project must be shown to either "(a) principally benefit low and moderate income persons, or (b) aid in the prevention or elimination of slums and blight, or *Page 1183 
(c) meet other community development needs having a particular urgency." 24 C.F.R. 570.302 (b) (1983). The opinion of the federal court dealt exclusively with whether the use of the funds would meet the requirements set forth in the regulations. The final order that was issued stated that any use of federal funds would violate these regulations. Therefore, the issue of whether the decision to fund the sidewalk construction was made in an arbitrary and capricious manner was not litigated.
Additional support for our holding is provided in the federal court's order in response to the City's "motion to clarify" made following the filing of the instant suit. In that order the court said:
 "The above-styled cause was before this Court on the question of whether the Defendants could use federal funds, more specifically funds provided by the Housing and Community Development Act of 1974, for the construction of a sidewalk on the south side of Carter Hill Road from Sanford Street to Hall Street in Montgomery, Alabama. This Court had not exercised its pendent jurisdiction to decide whether city funds could be used to build said sidewalk. . . . [T]his Court did not mean to enjoin the use of City funds, only the City's use of funds provided by the Housing and Community Development Act of 1974." (Emphasis in original.)
Clearly the issue of whether the City acted in an arbitrary and capricious manner was not decided. Therefore, the trial court was correct in not applying the doctrine of collateral estoppel in this case.
The second issue presented by the plaintiffs is whether the trial court erred in not finding that the defendants improperly allocated funds for this construction project because the city council had not passed a specific ordinance authorizing the construction. The plaintiffs base their contention on Code 1975, § 11-48-5 (a), which they argue requires that a specific ordinance be enacted before any one of the enumerated improvements may be undertaken. Section 11-48-5 (a) provides in pertinent part:
 "When the council of any city or town shall determine to open, widen, extend, construct or improve any street, alley, avenue, sidewalk, highway or other public place or to make any other public improvements or undertake any work authorized by the provisions of this article, the cost of which or any part thereof it is proposed to assess against the property abutting on, served, illuminated, drained, elevated, reclaimed, protected or otherwise specially benefited or increased in value by said improvements, it shall adopt an ordinance or resolution to that effect."
In interpreting a statute, this Court must give effect to the intent of the legislature and, if possible, that intent is to be gathered from the language of the statute. Advertiser Co. v.Hobbie, 474 So.2d 93, 95 (Ala. 1985). This statute expressly provides that the City must pass an ordinance when the cost of the improvement is to be assessed against abutting property owners. All of the cases that have interpreted this particular Code section have been concerned with the necessity of an ordinance or resolution only when an assessment of cost is to be made. See, e.g., Streater v. Town of Town Creek, 234 Ala. 132,173 So. 853 (1937); Walton v. City of Mobile, 232 Ala. 200,167 So. 247 (1936); Garner v. City of Anniston, 178 Ala. 430,59 So. 654 (1912). In the absence of such an assessment of cost, such as in this case, a city is not required to pass a specific ordinance authorizing each individual improvement.
This is not to say that an ordinance was not passed which authorized the funds for this construction. In the general budget for the City, which was adopted by the city council, there was a line item that allocated $225,000 to the district in which the sidewalk construction is located. Under the form of government established in Montgomery, the mayor is responsible for the administration of the general budget and is authorized to make contracts on behalf of the City. Ala. Acts of 1973, No. *Page 1184 
618, § 4.06 (4). It was with this authority that the mayor of Montgomery entered into the construction contract utilizing funds properly appropriated in the City's budget. Therefore, the trial court did not err in finding that a specific ordinance was not necessary.
The third issue presented by the plaintiffs is whether the trial court erred when it failed to find that defendant Reed had a conflict of interest with respect to the sidewalk construction project. The plaintiffs contend that, as a city councilman, defendant Reed cannot legally receive any personal benefit from the construction project and that, since he had done so, the construction contract should have been invalidated.
The plaintiffs' argument is based on three Code sections which prohibit an official from using his public office for private gain. Section 36-25-5, Code 1975, which is part of the Code of Ethics for Public Employees, provides that no public official may use his official position "to obtain direct personal financial gain." Code 1975, § 11-43-54, states that a city councilman may not vote on any matter in which he has a "special financial interest." Code 1975, § 11-44-94, prohibits any officer or employee of a city from being "interested, directly or indirectly, in any contract for work or material . . . to be furnished or performed for the city."
We agree with the trial court that defendant Reed did not have a conflict of interest with respect to the sidewalk construction project. The plaintiffs' evidence failed to establish that Reed would receive any personal gain from the construction, or that he voted on a project while he had a financial interest in it, or that he has any interest in the contract between the City and the construction company to build the sidewalk. In the absence of such evidence, the trial court was correct in determining that no conflict of interest existed.
The final issue raised on this appeal is whether the trial court should have found the sidewalk construction to be a waste of taxpayer funds. The plaintiffs argue that the evidence presented before the court showed that no one in the vicinity of the construction desired a sidewalk and, therefore, that any appropriation of money for this project was improper.
In Alabama, a taxpayer within a city has the right to bring a suit against the city to prevent it from wasting public funds. See, Townsend v. McCall, 262 Ala. 554, 558, 80 So.2d 262, 265
(1955). In this kind of suit, however, the burden is on the party challenging the action to show that it is so arbitrary or unreasonable as to constitute a clear abuse of power. Alosi v.Jones, 234 Ala. 391, 394, 174 So. 774, 776 (1937). As this Court has previously said:
 "The city authorities, the governing body chosen for the purpose, with full opportunity to ascertain the facts, are charged with the responsibility of determining the propriety of measures within the scope of their police powers. The courts cannot invade this field. To do so is to enter the field of law making."
Blankenship v. City of Decatur, 269 Ala. 670, 675,115 So.2d 459, 462 (1959) (quoting Alosi v. Jones, supra).
The legislature has clearly delegated to cities the power to construct sidewalks and other public improvements. Code 1975, §11-48-4. With this power goes the discretion to decide where and when such improvements are to be made. McQuillan, MunicipalCorporations, § 37.18, § 37.25 (1971). We cannot say that the City has clearly abused this delegated power. The testimony presented by the plaintiffs, though persuasive on the fact that certain residents oppose the construction, does not show a clear abuse of power. Therefore, the trial court's decision not to enjoin the City from constructing the sidewalk was correct.
For the reasons stated, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and HOUSTON, JJ., concur. *Page 1185