### HENSLEY et al. v. CITIES SERVICE OIL CO.
#### No. 1160.

District Court, W. D. Oklahoma.
March 17, 1931.

Frank Petree, of Altus, Okl., and Stevens & Cline, of Lawton, Okl., for plaintiffs.

Warren T. Spies, of Bartlesville, Okl., and W. C. Austin, of Altus, Okl., for defendant.

VAUGHT, District Judge.

The plaintiffs in this action seek to enjoin the defendants from constructing a filling station in the city of Altus, and allege that they are the owners of the west half of lots 7, 8,

and 9 in block 13 of Julien addition to the city of Altus, county of Jackson, state of Oklahoma, and that the defendant is seeking to construct its filling station on the block immediately west of the property owned by these plaintiffs. Jackson street, 100 feet wide, runs north and south between the block containing plaintiffs' lots and the block on which the service station is sought to be erected. On the south side of the said blocks is what is known as Broadway. Broadway is a part of United States highway No. 62, state highway No. 7, running east and west through the city, and Jackson street is one of the principal thoroughfares running north and south. The Cities Service Company owns the southeast corner of the block. The west end of the block is occupied by a bottling works. The lot adjoining the works is a five-room house and is used as a bakery. Two other houses on the block are five-room frame houses built some twenty to thirty years ago, and the other house immediately north of the Cities Service property is a frame, six or seven room house which was moved from the property now owned by the Cities Service.

Under the agreed statement of facts, it is recited that the city of Altus is a city of approximately 9,000 people, and that there existed an ordinance of the city of Altus regulating the issuance of permits for the construction and maintenance of filling stations in certain areas of the city which required the written consent of 50 per cent. of the owners of the real estate improved for residential purposes, and located within 300 feet of the property in respect of which the permit was sought which should be filed with the city clerk, and canvassed by the city council, and approved by the council; that on May 23, 1930, there was filed with the city clerk a statement to the city council, being a written request "consenting that the City of Altus may issue and grant to the owners of the above lots a permit to erect, construct and maintain and operate a motor vehicle service or filling station," the lots in question being lots 11 and 12, block 31. The instrument was, in fact, executed by all persons whose names appear thereon except that it is charged by the plaintiffs, but not admitted by the defendant, that the signature of J. N. Moon was not subscribed to said instrument by him or by any person at his direction or request, it being agreed that no signature had been withdrawn from said petition prior to being acted upon, and the city council acted upon said petition as submitted to it; that the same became a public record in the office of the city clerk on May 23, 1930, and was not known by the plaintiffs herein until the 26th following. Said application was approved by the council, and a permit ordered to issue. The minutes of May 23, 1930, disclose that the vote of the council was unanimous. The permit was then issued.

It is the contention of the plaintiffs that the erection of this type of improvement will seriously affect the desirability as a residence of plaintiffs' property. The entire north half of block 31 in which the filling station is located is occupied by small rent houses, with the exception of one rather large frame house built in 1905, but which is now used as a rooming house and for light housekeeping.

The court is of the opinion from the evidence and the maps which have been introduced, including photographs of the various buildings, that there are no desirable residences in block 31. In the block immediately south of block 31, there is a filling station, and the remainder of the block is occupied by small frame houses built twenty to twenty-five years ago, rooming and boarding houses. The block west of block 31 is occupied by a high school, hospital, and two filling or service stations.

■■ In a rapidly growing city, the necessary development of the business section which is usually near the center of the city makes it necessary for the residential section to gradually recede in order to make room for business. That is one of the incidents in the growth of a city, and the mere fact that the business section of the city in this case has approached from a westerly to an easterly direction until it has reached Jackson street, the street between the plaintiffs' and the defendant's property, does not convince the court that the property of the plaintiff has been injured in value. It is true that the object for which it may be used might be changed, but the value of the property as business property would perhaps be greater than as residence property. It is evident from the testimony in this case that the plaintiffs are very much attached to their home, but people building valuable homes in modern cities, without taking into consideration the natural and logical development of the business section of the city, do so at their own peril, and the mere sentiment or attachment to a certain location is not sufficient to justify an order of the court, which in this case might affect other property than that of the plaintiffs. This case has been argued at length and carefully briefed, but the court is of the opinion that the allegations of the bill

are not sustained by the evidence, and the prayer for injunction is denied. Exception is allowed to the plaintiffs. The costs of this action will be taxed against the defendant.