147 So. 391

## LEARY v. ADAMS et al.
### 6 Div. 271.

Supreme Court of Alabama.
March 23, 1933.

Rehearing Denied April 20, 1933.

Horace C. Wilkinson, of Birmingham, for appellant.

W. J. Wynn and Jas. H. Willis, of Birmingham, for appellees.

GARDNER, Justice.

The city of Birmingham, pursuant to express legislative authority (General Acts 1923, p. 581), entered into a comprehensive zoning scheme, passing an ordinance, effective August 4, 1926, by which the city is divided into two major districts, one relating to the use of property and the other to the matter of height and area. Birmingham Code 1930, p. 336.

We are here concerned only with the first, the "Use Districts," which are subdivided as follows: "A–1–Residence; A–2–Residence; B–1–Residence; B–2–Residence, Commercial, Light Industrial and Heavy Industrial." Nor is there here necessity for detailed discussion as to these various districts. Suffice it to say that as to "A–1–Residence" districts the use is limited to one-family dwellings, with some few additional uses such as a church, library, museum, playground, greenhouse or nursery, truck garden, and accessory uses incident thereto. While as to "B–1–Residence" districts the use includes all in A–1–Residence and, in addition, two-family and multiple dwellings, hotels or apartments, hospital (with limitation), fraternity or sorority house or dormitory, clubhouse, public or semipublic institutions, educational or charitable (with limitation), lodging · or boarding houses, electric substation without rotary machinery, gas regulation station, accessories to above uses.

There are some further regulations as to both "A–1 and B–1–Residence Districts" which are not important to the instant case, and, therefore, need no specific reference.

Gasoline filling stations are not among the permitted uses in either of these districts, but are expressly classed in the "Commercial District." Birmingham Code 1930, pp. 339 and 341. A copy of the "Zone Map," here exhibited, very plainly discloses the various districts into which the city is divided, and is most helpful.

Petitioner owns a vacant lot on the northwest corner of Clairmont avenue and Forty-First street, fronting 165 feet on the north side of Clairmont, and extending back northwardly 140 feet to an alley, upon a portion of which he desires to erect a gasoline filling station with a building that is "structurally proper." The building inspector declined to issue the permit, and, his action being sustained on appeal to the zoning board of adjustment (Birmingham Code 1930, p. 345), petitioner has resorted to the courts. Gillette v. Tyson, 219 Ala. 511, 122 So. 830.

The validity of the zoning ordinance, in its general scope, is not questioned (White v. Luquire Funeral Home, 221 Ala. 440, 129

So. 84, 87), but the argument is that, as applied to petitioner and his property, the restrictions of use are clearly arbitrary and unreasonable and constitute a taking of his property without due process of law, in violation of both the State and Federal Constitutions. See Const. Ala. 1901, art. 1, § 13; Const. U. S. Amend. 14. The authority for zoning laws is found within the bounds of the police power, asserted for the public welfare, and it has been well said that the line in this field which separates the legitimate from the illegitimate assumption of power is incapable of precise delimitation, varying with circumstances and conditions. The leading case on the subject, and one which speaks with final authority concerning the due process clause of the Fourteenth Amendment to our Federal Constitution, is that of Village of Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016.

■■■ The cases, of course, recognize the rule that the lawmaking authorities may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities; that governmental interference by zoning ordinances with such use, is not unlimited, and such restrictions should bear some substantial relation to the public health, safety, morals, or general welfare, [State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210; Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; Standard Oil Co. v. City of Bowling Green, 244 Ky. 362, 50 S.W.(2d) 960] or, as otherwise elsewhere expressed, the "public convenience or the general prosperity" (Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, 26 S. Ct. 341, 349, 50 L. Ed. 596, 4 Ann. Cas. 1175; Town of Wake Forest v. Medlin, 199 N. C. 83, 154 S. E. 29).

As applicable to the rules relating to regulations and restrictions of zoning ordinances, the Euclid Case, supra, is here much in point, and wherein it is noted that, while the meaning of constitutional guaranties never varies, yet the scope of their application must expand or contract to meet new and different conditions constantly coming within the field of their operation. "In a changing world it is impossible that it should be otherwise."

As to ordinances of this character, and their particular application, much must depend upon circumstances and conditions, for, as there pointed out, zoning regulations which would be clearly valid as applied to the great cities might be as clearly invalid when applied to rural communities. The law of nuisances is to be consulted and considered as helpful in determining the scope of the power. In this connection, the court in the Euclid Case, supra, said: "Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. * * * A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. * * * There is no serious difference of opinion in respect of the validity of laws and regulations * * * excluding from residential sections offensive trades, industries and structures likely to create nuisances." In that case, the exclusion from the residential district was in general terms of all industrial establishments, and it was observed that such a general provision may exclude, along with the rest, industries which are neither offensive nor dangerous. But the court said that "this is no more than happens in respect of many practice-forbidding laws which this court has upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. * * * The inclusion of a reasonable margin, to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class." It cannot be said that the ordinance in this respect "passes the bounds of reason and assumes the character of a merely arbitrary fiat." But, as here more directly in point, the court in the Euclid Case, supra, proceeds to uphold the restrictions there in question upon the "broader exclusion from residental districts of all business and trade structures," expressing concurrence in the majority view of the state courts that such restriction bears a "rational relation to the health and safety of the community," and quoting approvingly from the Illinois and Louisiana courts in City of Aurora v. Burns, 319 Ill. 84, 149 N. E. 784, 788, and State v. City of New Orleans, 154 La. 271, 97 So. 440, 444, 33 A. L. R. 260, respectively. This by way of giving recognition to the validity of the general comprehensive scheme of excluding trades and industries from residential districts, though the court further observed that as to concrete application of the provisions of the ordinance in minute detail

to particular premises or conditions some of them may be found clearly arbitrary and unreasonable.

The case of Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 595, 71 L. Ed. 1074, is also of interest, especially in view of the fact that "Zone B" there involved will be seen to closely correspond to the "B—Residence" district here considered, wherein approval was given to the opinion of the California court in Zahn v. Board of Public Works, 195 Cal. 497, 234 P. 388, 395. In this latter case stress is laid upon the fact that, where a given situation admittedly presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies largely in legislative discretion, and the courts are loathe to substitute their judgment as to the necessity for a particular enactment for the legislative judgment with reference to its exercise.

The United States Supreme Court in Zahn v. Board of Public Works, supra, gave expression to the same thought in the following concluding language: "The common council of the city, upon these and other facts, concluded that the public welfare would be promoted by constituting the area, including the property of plaintiffs in error, a zone 'B' district, and it is impossible for us to say that their conclusion in that respect was clearly arbitrary and unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

And our own court in White v. Luquire Funeral Home, supra, gave expression to the same rule for the court's guidance, saying: "A broad and comprehensive scheme worked out upon full information by competent authority on the ground is the natural order. The courts, in recognition of the legitimate government functions committed to them, their superior opportunity to know and consider all the varied and conflicting interests involved, to balance the burdens and the benefits, to lay out zoning districts with a view to the general welfare of the city, are slow to set up their own opinions as against those charged with and in position to rightly perform such duty."

And again, in the same case, the rule is more concisely stated that, "if men may reasonably differ in view of all the circumstances, the action of the zoning authorities will be sustained."

Coming to the consideration of the concrete case before us, it is to be observed that, while the permitted uses in "B—1—Residence" district are somewhat more extensive than "A—1—Residence" district, yet the character of the former as a residence district is preserved. The California court, in Zahn v. Board of Public Works, supra, made a like observation in the following language: "With reference to the contention that the class of uses permitted in zone B is based upon no intrinsic, natural, or constitutional distinction, it will suffice to say that there is an obvious distinction between the type of buildings which the ordinance permits to be erected in zone B and a business block which is not permitted in said zone. It is apparent that zone B provides for what may, in a manner of speaking, be called a quasi residential district the character of which is not destroyed by the mere fact that the occupants of the residences permitted therein may keep offices for the transaction of professional business in their homes. Such classification of uses is not inherently discriminatory and the creation of and the necessity for such classification is a matter largely within the legislative judgment of the city council."

The district here considered, therefore, is residential in character, excluding trades and industries. It was so zoned after full opportunity for objections to be interposed as required by law. Petitioner had owned the lot here in question since 1907, and it may be assumed, the petition being silent thereon, that he then saw and made no objections to the fact that his lot was within such restricted area. But this would be a matter of no particular moment, only serving to a slight extent by way of illustration as to the reasonableness of the classification.

The duties of the local authorities charged with the completion of the zoning scheme of the city were evidently arduous and of a delicate character, and we have seen that a general plan, excluding trades and industries from residential districts, has met the approval of the highest authority and expresses the current of judicial thought. Euclid v. Ambler Realty Co., supra.

"A broad and comprehensive scheme worked out upon full information by competent authority on the ground is the natural order." White v. Luquire Funeral Home, supra. No unjust discrimination is shown or charged. It appears from the zoning map that "B—1—Residence" district comprises a relatively small area and is situated in the midst of and completely surrounded by the more highly restricted "A—1—Residence" district, with the single exception that at the western extremity is a small "commercial" district. The local authorities are presumed to be familiar with all the surroundings and possess a superior knowledge of the true condition, the varied and conflicting interests involved, and they must of necessity be accorded some measure of discretion. As has been said, the courts are slow to set up their own opinions as against those charged with and

in position to rightly perform such duty. And, before they do so, it must be made to appear that such an ordinance "passes the bounds of reason and assumes the character of a merely arbitrary fiat." If, upon the matter, men may reasonably differ in view of all the circumstances, the action of the zoning authorities will be sustained. That men may reasonably differ as to the location of a filling station in a residential district, no argument need be advanced, for a cursory examination of the adjudicated cases will suffice for all purposes. It is the rule of our decisions that a filling station is a lawful business, and not a nuisance per se, even in a residential district, but may become such per accidens. "The matter of location frequently becomes of controlling importance." Fletcher v. Barnard, 222 Ala. 380, 133 So. 29, 30. And, in City of Tuscaloosa v. Standard Oil Co., 221 Ala. 670, 130 So. 186, the denial by the local authorities of a permit for such use in a "semiresidence" district was sustained.

But there are high authorities that do not go so far and hold in effect that a gasoline filling station in a residential district is a nuisance per se, regardless of a zoning ordinance. Illustrative is the case of Appeal of Samuel Perrin, 305 Pa. 42, 156 A. 305, 79 A. L. R. 912, from the Supreme Court of Pennsylvania. Such a holding may be contrary to the weight of authority (Fletcher v. Barnard, supra; Bizzell v. Board of Aldermen, 192 N. C. 348, 135 S. E. 50, 49 A. L. R. 755; Town of Wake Forest v. Medlin, 199 N. C. 83, 154 S. E. 29), but these divergent views but serve to demonstrate that it is a matter concerning which men may reasonably differ.

■ Petitioner has gone to the pains to show that the establishment of his proposed filling station will not constitute a nuisance. But to sustain the denial of his permit, it is not essential to show the contrary. Men may reasonably differ in view as to whether or not such a trade or business in a residential or semiresidential district is likely to create or become a nuisance, however "structurally proper" the building or well conducted the business may be, and, such being the case, the action of the local authorities cannot be pronounced unreasonable and arbitrary and invasive of the property owners' constitutional rights. Euclid v. Ambler Realty Co., supra; White v. Luquire Funeral Home, supra. As said by the Illinois court in Aurora v. Burns, supra: "The establishment of such districts or zones may, among other things, prevent congestion of population, secure quiet residence districts, expedite local transportation, and facilitate the suppression of disorder, the extinguishment of fires, and the enforcement of traffic and sanitary regulations. * * * The exclusion of places of business from residential districts is not a declaration that such places are nuisances, or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, the congestion, disorder, and dangers which often inhere in unregulated municipal development."

Petitioner, by his counsel, very forcibly and ingeniously presents the argument that the ordinance as to his property amounts to confiscation by reason of the interest on the mortgage debt and taxes, and the fact that he cannot improve the property otherwise so as to get a return upon his investment. We have examined the authorities cited [among them Williams v. Gage, 130 A. 721, 3 N. J. Misc. 1095; Standard Oil Co. v. Kearney, 106 Neb. 558, 184 N. W. 109, 18 A. L. R. 95; Hensley v. City Service Oil Co. (D. C.) 58 F.(2d) 347; Koos v. Saunders, 349 Ill. 442, 182 N. E. 415; Standard Oil Co. v. Bowling Green, 244 Ky. 362, 50 S.W.(2d) 960; McCabe v. Zoning Board, 50 R. I. 449, 148 A. 601; City of St. Louis v. Evraiff, 301 Mo. 231, 256 S. W. 489; Ingersoll v. South Orange, 126 A. 213, 2 N. J. Misc. 882; State ex rel. v. Fowler, 90 Fla. 155, 105 So. 733; Ignaciunas v. Town of Nutley, 99 N. J. Law, 389, 125 A. 121; Mayor & Council of Wilmington v. Turk, 14 Del. Ch. 392, 129 A. 512; Women's Kansas City S. A. Soc. v. Kansas City, Mo. (C. C. A.) 58 F.(2d) 593; Roman Catholic Archbishop v. Baker, 140 Or. 600, 15 P.(2d) 381; City of Youngstown v. Kahn Bros., 112 Ohio St. 654, 148 N. E. 842, 844, 43 A. L. R. 662; Oklahoma City, Okl., v. Dolese (C. C. A.) 48 F.(2d) 734], but we find for the large part there are differentiating features.

By way of illustration we make reference to a few of these cases. In Standard Oil Co. v. Kearney, supra, there was no general zoning ordinance involved, but merely one evidently designed to prevent the erection of the one then considered, and which was sought to be established on one of the principal business streets of the city. In Koos v. Saunders, supra, the proposed filling station was in a business district, and the restriction related to the matter of consent of adjoining owners. In Standard Oil Co. v. City of Bowling Green, supra, the opinion lays much stress on the fact that the filling station had without harm to any one or to property interest been on that particular corner for six years prior to the ordinance. And in State v. Fowler, supra, there was no general law authorizing zoning by cities.

A further detail review would extend this opinion to undue length. As noted above, in many of these authorities there are clear distinguishing characteristics, while some of them are from courts placed in the minority column as to zoning laws by the United States Supreme Court in the Euclid Case, supra. Among these are those from New Jersey and Texas.

The holding of this court is in harmony with the majority view, as has been previ-

ously noted. Perhaps the strongest presentation of the minority view is to be found in Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, where the natural and fundamental rights of the citizen and property owner are forcefully stated.

In Youngstown v. Kahn Bros., supra, the Ohio court lays some stress upon the fact there was no general scheme of zoning for the city, but only what may be called a "'block' ordinance," which was held to be wholly unrelated to the public welfare.

The case of Women's Kansas City Society v. Kansas City, Mo. (C. C. A.) 58 F.(2d) 593, contains a useful array of authorities with appropriate comments, and the opinion recognizes as correct the principles by which courts are to be guided in such matters, as we have herein indicated. And, guided by these principles, under the facts disclosed in that particular case, the court merely considered that the restriction bore no reasonable relation to any legitimate ends of the police power. But we forego further discussion of these authorities.

▉ Petitioner presents a strong appeal from the standpoint of financial loss occasioned by this restriction. But, as said by the North Carolina court in City of Elizabeth City v. Aydlett, 201 N. C. 602, 161 S. E. 78, 81: "Financial loss is not the test; the question is whether the scheme is sound, and the classification fair. If the question is fairly debatable, the court will not substitute its judgment for that of legislative body which creates the ordinance."

And answering a like argument in Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 145, 60 L. Ed. 348, Ann. Cas. 1917B, 927, the court said: "It is to be remembered that we are dealing with one of the most essential powers of government,—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily." And in Chicago, B. & Q. Ry. Co. v. Illinois ex rel. Drainage Com'rs, 200 U. S. 561, 26 S. Ct. 341, 350, 50 L. Ed. 596, 4 Ann. Cas. 1175, is the observation that, "if the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution."

▉ Lastly it is insisted that the above-cited act authorizing the zoning ordinance is not to be construed as authority for the municipality to prohibit any lawful business in a restricted area, as the words "regulate and restrict" have no such meaning. We have read the cited cases which will not be here reviewed. Among them is Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441, which appears more clearly to sustain this view. Of course these words could not be interpreted to mean authority to prohibit the use of property for any purpose, but we cannot subscribe to the proposition that, as used in statutes authorizing zoning ordinances, the words "regulate and restrict" have so narrow a meaning as is insisted. "To 'restrict' is to restrain within bounds; to limit; to confine." 4 Words and Phrases, Second Series, 364. The use of property cannot well be "limited" without at the same time prohibiting its use for some purpose. The right to restrict or limit a use necessarily involves some prohibition. And the very language of the whole act so indicates, as illustrated by the following provision therein: "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to * * * encouraging the most appropriate use of land throughout such municipality."

The city contends that the board of adjustment was limited in its functions to hear appeals concerning minute details and principally as to height and area only, and was without authority to modify the zoning ordinance as here sought. This may present a debatable question (In re Rose Builders' Supply Co., 202 N. C. 496, 163 S. E. 462; Falvo v. Kerner, 222 App. Div. 289, 225 N. Y. S. 747; People v. Board of Appeals, 234 N. Y. 484, 138 N. E. 416), the consideration of which may well await the necessity for its determination.

But this is but a further argument against the granting of relief to petitioner, and what has been said suffices to show that, even if the board had such full authority, our opinion is that nothing here appears that would justify any interference with its action. A decision of the specific question of authority is therefore here pretermitted as unnecessary.

Our conclusion is that petitioner has not shown his right to the writ, and the ruling sustaining the demurrer to the petition is due to be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.