15 So.2d 585

## WHITE v. BOARD OF ADJUSTMENT OF CITY OF BIRMINGHAM.

### 6 Div. 109.

Supreme Court of Alabama.

Oct. 28, 1943.

Rehearing Denied Dec. 2, 1943.

McGowen & McGowen and H. L. Anderton, all of Birmingham, for appellant.

Solomon & Berkowitz, of Birmingham, for appellee.

LIVINGSTON, Justice.

The appeal is from a judgment of the Circuit Court of the Tenth Judicial Circuit of Alabama, affirming the action of the Board of Adjustment of the city of Birmingham, in sustaining the refusal of the building inspector to issue a permit, and in denying the petition of appellant, Mrs. Ethel White, for the right to continue renting apartments in her dwelling located at 3603 Cliff Road.

The city of Birmingham pursuant to express legislative authority, General Acts 1923, page 581 (carried into the Code of 1940 as sections 710 et seq. Title 62), entered into a comprehensive zoning scheme, passing an ordinance effective August 4, 1926, by which the city is divided into two major districts, one relating to the matter of property, and the other to the matter of height and area. City of Birmingham Code of 1930, page 336.

No point is made touching the validity of the ordinance, and the principal question raised is the proper construction of subsection (e), paragraph 2 of section 45 thereof.

The pertinent part of the legislative enabling act, carried into the Code of 1940 as section 717, Title 62, reads as follows: "The governing body of the city shall provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this section shall provide that the said board of adjustment shall, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent, and in accordance with general or specific rules therein contained. The board of adjustment shall consist of three members, each to be appointed by the governing body of the city, and shall hold office, and be removable at the will and pleasure of the governing body of such city. The board shall adopt rules in accordance with the provisions of any ordinance adopted pursuant to this subdivision. Meetings of the board shall be held at the call of the chairman and at such other times as the board may determine. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses. All meetings of the board shall be open to the public. The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record. Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time as provided by the rules of the board by filing with the officer from whom the appeal is taken and with the board of adjustment a notice of appeal specifying the ground thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken. An appeal stays all proceedings in furtherance of the action appealed from unless the officer from whom the appeal is taken certifies to the board of adjustment after the notice of appeal shall have been filed with

him that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property. In such case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of adjustment or by a court of record on application or notice to the officer from whom the appeal is taken and on due cause shown. The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time. Upon the hearing any party may appear in person or by agent or by attorney. The board of adjustment shall have the following powers: To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this subdivision or of any ordinance adopted pursuant thereof. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinances shall be observed and substantial justice done. In exercising the above mentioned power such board may, in conformity with the provisions of this subdivision, reverse or affirm wholly or partly or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken. The concurring vote of two members of the board shall be necessary to reverse any order, requirement, decision or determination of any such administrative official, or to decide in favor of the applicant or any matter upon which it is required to pass under any such ordinance or to effect any variation in such ordinance. The board of adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ. The return shall concisely set forth such other facts as may be pertinent and material to show

the grounds of the decision appealed from and shall be verified."

In pursuance with the foregoing authority, the ordinance of August 4, 1926, established a board of adjustment and defined its powers and duties. In pertinent part it provides: Section 45—Powers and Duties. "(c) The Board shall modify the strict application of the provisions of this ordinance and cause a permit to be issued upon such reasonable conditions as it may prescribe, in the following cases: * * * 2. For the conversion of a dwelling existing at the time of the passage of this ordinance in an 'A' residence district, into a two-family or multiple dwelling, provided said dwelling when so converted, shall otherwise comply as to height, area and other requirements, with the regulations herein provided for an 'A' residence district and for the height and area district within which it is located."

The dwelling now owned and occupied by appellant was built by another in 1911 and purchased by appellant in 1940. It was therefore in existence at the time the ordinance, supra, was passed in 1926. It contains nineteen rooms and five baths. Other than being converted into a multiple dwelling, it complies as to height, area and other requirements with the regulations provided for in said ordinance for an "A" residence district.

Appellant insists that the whole purpose underlying the adoption of paragraph 2, subsection (e) of section 45 of the ordinance, was to make sure that the provisions of the ordinance preventing multiple dwellings in "A" residence districts would not apply to "a dwelling existing at the time of the passage of the ordinance," provided said residence was converted in compliance with other regulations as to height, area, etc., for "A" residence districts. We cannot agree that such is a proper construction.

Rules governing in the construction of State statutes are likewise applicable to municipal ordinances. American Bakeries Co. v. City of Opelika, 229 Ala. 388, 157 So. 206. The legislative intent must be gathered from the four corners of the ordinance, and, if lawful, given effect by the courts. State ex rel. Ellis v. Griggs, 227 Ala. 681, 151 So. 850; City of Birmingham v. Southern Exp. Co., 164 Ala. 529, 51 So. 159.

One of the principal purposes of the board of adjustment is to apply the

discretion of experts to exceptional instances where permits are desired, not strictly conforming to the regulations provided in the ordinance. That this is so is clearly indicated by the very language of section 717 of the enabling act, and subsection (e), quoted above. To rule in accordance with appellant's insistence would defeat the very purpose underlying the enactment of subsection (e) paragraph 2. It would render the board of adjustment useless in respect to the matters here considered. The intent of the ordinance controls, and when the spirit and purpose of the ordinance require the word "shall" to be construed as permissive, it will be done. Clearly, that construction of the word "shall" in subsection (e) is necessary to effectuate the purpose of the subsection. Montgomery v. Henry, 144 Ala. 629, 39 So. 507, 1 L.R.A.,N.S., 656, 6 Ann.Cas. 965; Kinney v. House, 243 Ala. 393, 10 So.2d 167; 57 Corpus Juris 552.

Section 719, Title 62, Code of 1940, provides: "Any party aggrieved by any final judgment or decision of the board of adjustment, may within fifteen days thereafter appeal therefrom to the circuit court or court of like jurisdiction, by filing with such board a written notice of appeal specifying the judgment or decision from which appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the cause to be certified to the court to which the appeal is taken and the cause shall in such court be tried de novo."

 The appeal before us is from the judgment of the Circuit Court of the Tenth Judicial Circuit of Alabama, rendered upon a trial de novo, in accordance with the foregoing Code section, of the issues heard and passed upon by the board of adjustment. The testimony was taken orally before the trial judge, without a jury. Where this procedure is followed, his judgment, unless palpably wrong, will not be here disturbed. Puckett v. Puckett, 240 Ala. 607, 200 So. 420; Bonds v. Bonds, 234 Ala. 522, 175 So. 561; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Wade v. Miller, 208 Ala. 264, 93 So. 905; Murphy v. May, 243 Ala. 94, 8 So.2d 442.

There is nothing in the record to justify a disturbance of the finding of the trial judge.

We find no error in the record, and the judgment is due to be and is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS, BOULDIN, and STAKELY, JJ., concur.

BROWN, J., dissents.

FOSTER, J., not sitting.

BROWN, Justice (dissenting).

It is my judgment that the prevailing opinion and conclusion thereby superinduced—the affirmance of the judgment of the circuit court—is founded upon a misconception of the question presented on the record.

The court is not here concerned with the exercise of legislative discretion in the enactment of the ordinance or legislative abuse of power—the question presented in Leary v. Adams, 226 Ala. 472, 147 So. 391.

The question presented here is the application of the ordinance—the law—to a case where the undisputed facts bring the case clearly within the very letter of the law. The misconception is evidenced by the following utterances in the majority opinion, i. e., "One of the principal purposes of the board of adjustment is to apply the discretion of experts to exceptional instances where permits are desired, not strictly conforming to the regulations provided in the ordinance." To paraphrase these utterances, the principal purpose of the board is to apply the ordinance to instances where the board does not deem it proper to conform to the ordinance as written, fixing property rights and personal privileges. This principle is only applicable to legislative bodies in the enactment or ordination of rules governing property rights and civil conduct, and then must not be arbitrarily applied so as to impinge the principle of equal protection of the law.

In Leary v. Adams, supra, the question involved was the application of legislative power, in fixing legislative policy in the adoption of this particular ordinance, in the preparation of which one of the city's legal experts, according to the evidence in this record, participated as a draftsman. In that case, to quote from the opinion in Leary v. Adams, supra: "The city contends that the board of adjustment was limited in its functions to hear appeals concerning minute details and principally as to height and area only, and was without authority to modify the zoning ordinance as here [there] sought." [Brackets supplied] 226 Ala. 477, 147 So. at page 396.

52

The manifest purpose of the city commission in incorporating subsection (e), paragraph 2, Section 45, was to prescribe a uniform rule of action making the enjoyment of the right provided for and set up in the ordinance, and to relieve the ordinance from the objection that the right to have residence property situated in the district, prior to the adoption of the ordinance, converted into multiple residences left to the arbitrary choice of the administrative municipal officers, without reference to all persons of the class· to which the ordinance is intended to be applied.

Non constat, to furnish a definite standard for the control of the municipal officers in the application of the zoning ordinance without which it would violate the provisions of the constitutions, both state and federal, guaranteeing equal protection of the law. 37 Am.Juris. p. 778, § 160 and authorities cited in annotation thereto.

There is a provision in said subsection (e) that in causing a permit to be issued, reasonable conditions may be prescribed. This discretion does not come into being until the board exercises its power to issue the permit and clearly means that it may prescribe the conditions as to the improvement permitted, that is whether the multiple dwelling shall consist of two or more apartments, sufficient entrances and sanitary equipment in respect to the same.

There is no dispute in this case that the appellant's property was located and existed in the territory covered by the district before the ordinance was adopted, and the evidence shows that it had been devoted to the use of two families, there being two kitchen sinks, and that appellant on permits granted by the city authorities supplied three more, providing for as many as five families. It is not controverted that "said dwelling, when so converted [into a multiple dwelling] otherwise complies as to height, area and other requirements, with the regulations" provided in the ordinance for an "A" class residence district, and as to the height and area of the district within which it is located.

The evidence shows without dispute that the controversy provoking this litigation arose on the protest of certain citizens residing in the same area and attingent to the property in question. That there are other duplex apartments, boarding houses, rooming places, in other residences in the same territory, permitted and tolerated by the city authorities without question.

There is no such question "of a pig in the parlor" referred to in Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074, and quoted in Leary v. Adams, supra. Nobody questions that the appellant and her husband, Dr. White, and their roomers, are respectable, high class citizens, clean and free of disease or contamination and of the same quality of citizens that reside in the immediate territory surrounded by apartment houses, boarding houses, and rooming houses, where more than a single family live in single residences in said district. Appellant offered to show that it was necessary to keep roomers or tenants in the large dwelling to enable her to meet the payments on the mortgage covering the property, in which she had invested her former home and all of her life savings, and this was denied her, on the objection of the appellee, "the Board." We wonder if Ahab lives in this district. I Kings XXI. If it is a question of discretion, this inquiry was pertinent and material. There is, however, a "nigger in the wood pile," as appears from the evidence in this case—appellant has on her property a servant's house in which negroes, who serve people in this residence, live.

It was all right with the building inspector, the evidence shows, for appellant to have four tenants if she would get rid of the negroes, "as he had no authority to change the law."

Section 8 of the ordinance, dealing with "Accessory Uses, Residence Districts," provides: "In either an 'A' or 'B' Residence District, accessory uses shall be * * *. 2. Quarters for servants employed on the premises. Such quarters may be located either within the principal dwelling or in a separate building on the same lot and not less than sixty (60) feet from the front lot line." Appellant's property conforms to this regulation.

It is a familiar principle that: "A law may be fair on its face and impartial in appearance, but if it is administered by public authority with an evil eye and an unequal hand, so as practically to make illegal discrimination between persons in similar circumstances material to their rights, the denial of equal justice is within the prohibition of the Fourteenth Amendment to the Constitution. * * *." 37 Am.Juris. § 161, p. 782; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Thompson v. Smith, 155 Va. 367, 154

S.E. 579, 71 A.L.R. 604; Bailey v. State of Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191.

The strained interpretation of the ordinance, by the prevailing opinion, invests the city board with an unbridled discretion and renders the ordinance [Bailey v. State of Alabama, supra], arbitrary and uncertain, depending upon the will of the particular incumbents of the office, and is violative of the constitutional guaranties of equal protection of the law.

Another thought, the statute under which this ordinance was enacted, and the ordinance itself, provide that the board of adjustment shall review the rulings of the superintendent or inspector de novo, and § 719, Tit. 62, Code 1940, provides: "in case of such appeal such board shall cause a transcript of the proceedings in the cause to be certified to the court to which the appeal is taken and the cause shall in such court be tried de novo." These provisions are inconsistent with the holding that the board and the court are invested with an irrevisable discretion in applying the law contrary to its express provisions. The statute also provides: "The board of adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ. *The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified.*" [Italics supplied.]

The record sent up to the circuit court does not disclose on what grounds the appellant was denied the right provided for in the ordinance, and for which she applied. There is nothing in said ordinance or the enabling act that confers power or jurisdiction on the board to restrain the property owner from renting rooms in her dwelling except by criminal prosecution.

In my judgment the prevailing opinion in this case, as well as the judgment of the circuit court which it affirms, is laid in error, and the judgment should be reversed and one here rendered granting the permit. I, therefore, respectfully dissent.