169 So.2d 424

**A. W. TODD, as Commissioner of Agriculture & Industries,**

v.

**Forrest H. INGRAM.**

**6 Div. 910.**

Supreme Court of Alabama.

Sept. 10, 1964.

Rehearing Denied Dec. 10, 1964.

Richmond M. Flowers, Atty. Gen., and Geo. O. Miller, Asst. Atty. Gen., for appellant.

St. John & St. John, Cullman, for appellee.

PER CURIAM.

A decree of the Circuit Court of Cullman County, in equity, is here challenged by appellant who was the respondent in the lower court.

The decree, responsive to a declaratory proceeding filed pursuant to Article 12, § 156 et seq., Title 7, Code of Alabama 1940, declared Act No. 583, General Acts of 1957, page 806, to be unconstitutional in its application to the business of appellee; and also provided for a permanent injunction against enforcement of the Act with respect to such business operations.

There were no controverted factual issues presented for consideration of the court. Complainant alleged and respondent admitted facts as follows: Complainant is engaged in Cullman County in the production and sale of poultry; and also manufactures and mixes the feed which is used exclusively for the feeding of his own poultry, which he handles under contract feed agreements with others, whereby he furnishes baby chicks, feed, medicine, and other supplies, all according to a written agreement, a form copy of which appears in the record before us and is made a part of the complaint.

The contract also provides that the other party to the agreement, referred to there and here as the lessor, is the owner, or has lawful possession, for the duration of the lease, of certain poultry houses and equipment located in a designated county which he leases to complainant, referred to in the contract and here as lessee, under terms and conditions specified in the contract.

The lessor, in addition to furnishing the facilities above mentioned, also agrees to furnish the labor for growing the chicks to broiler size, at which time the broilers are picked up by complainant with his own trucks and delivered to his own processing plant for processing, where and during the processing the broilers are subject to Federal inspection under the direction of the United States Department of Agriculture.

The services of the lessor (the caretaker) under the agreement set forth consists in furnishing heat, water, and labor in feeding and care, which begins on delivery of the chicks by lessee (the owner), immediately after hatching, and terminates usually about nine weeks thereafter.

For such services, lessor receives a guaranteed payment per pound as of the date the birds are picked up by lessee and also, as a bonus for diligence, receives an agreed amount for conversion of the feed weight into meat weight at a point of ratio agreed upon in the contract.

The complaint further avers that respondent is threatening to seize the feed of complainant and apply the statutory penalty provisions of Act No. 583, supra,

against him, all of which the respondent, the Commissioner admits.

No question is raised here that the pleadings and the allegations of the complaint, which are admitted, do not present a justiciable issue for a declaratory decree as prayed. We conclude that a justiciable issue is presented.

Act No. 583, supra, amending §§ 57, 58, 59, and 60, Title 2, Code of Alabama 1940 relating to the sale and distribution of commercial feeds for animals and poultry, provides that "Every lot or parcel of commercial feeds sold or offered for sale or distributed in this State shall have affixed thereto a tag or label * * *" certifying "the net weight of the package" together with certain other information including "the common names of each of all the ingredients of which the article is composed"; a copy of such information must be filed with the Commissioner of Agriculture, accompanied by a fee of $2.00 for each brand offered for registration. A stamp tax or inspection fee must be paid the Commissioner. Permit to sell or distribute the feed may be granted on condition that the applicant agrees to keep required records.

The Act also provides as follows:

"Section 3. (Amending Section 59)

" 'Section 59. * * * The term "distribute" or "distributed" as used in this article in connection with commercial feeds shall include commercial feeds supplied, furnished, exchanged or used for the feeding or growing of livestock, animals or poultry under a contract, lease or agreement whereby commercial feeds are furnished or supplied to a person for the purpose of growing, producing or feeding livestock, poultry or domestic animals whether such commercial feeds are sold to such persons or not.' "

Section 4 of the Act, amendatory of § 60, supra, contains a paragraph as follows:

"Any person producing or purchasing grain or other material and grinding or mixing the same for the purpose of feeding his or its own livestock, other animals or poultry shall not be subject to the provisions of this Article, provided, however, that this exemption shall not be applicable to such mixed feeds furnished, supplied or used for the growing or feeding of livestock, other animals or poultry under a contract, lease or agreement whereby commercial feeds are furnished or supplied to another person for the purpose of growing, producing or feeding livestock, other animals or poultry. It is further provided that if the inspection fee levied under the provisions of Section 59 hereof has been paid upon any concentrated commercial feeds used as a supplement or base for mixing purposes then such inspection fee shall be deducted from the gross amount of the inspection fee due on the total commercial feeds produced."

The contention of appellant is that the Act as applied to complainant's business activities is a valid exercise of the police power of the State of Alabama; that it does not in such application violate either § 1, Article 1, Constitution of Alabama 1901, or the Fourteenth Amendment to the Constitution of the United States. Appellee takes issue on these contentions.

We conclude that application of the amendatory act to complainant's business operations can be justified, if at all, only because it is a valid exercise of the police power of the state. There is no contention on the part of appellant that the fees imposed are for the general revenue of the state.

We have observed in the case of Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 13, 18 So.2d 810:

" * * * this (police) power must not be exercised arbitrarily or capriciously, and there must be some rea-

sonable relation to the regulation and the ends to be attained. But if upon the matter men may reasonably differ, in view of all the circumstances, the legislative act in the exercise of the police power must be sustained. Leary v. Adams, supra [226 Ala. 472, 147 So. 391]. The cases recognize the rule that the lawmaking authorities may not, under the guise of police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. The restriction imposed must bear some substantial relation to the public need or general welfare." (Par. Added)

Is there in Act No. 583, supra, as it applies to appellee, an arbitrary or capricious exercise of power that has no reasonable relation to the regulation and the ends to be attained? Does this law, as appellant seeks to apply it to the business operations of appellee, impose restrictions that are unnecessary and unreasonable on complainant's use of his private property or his pursuit of lawful, occupational activities? Do they bear some substantial relation to the public need or general welfare?

The answer of appellant is that the poultry business is fast becoming a very important and productive segment of agriculture in Alabama; that hundreds of people are now or will be employed as independent contractors under contracts similar to the one here in issue; that this large segment of lessors is entitled to protection against imposition, fraud, or deceit on the part of lessee in furnishing feed that should contain the necessary ingredients that are calculated to increase the weight of the chickens reaching broiler size.

But is there any incentive or inducement for the lessee to furnish feed that lacks a full measure of nutritive ingredients? The more poundage the lessee gets from the feed that he furnishes, the more the return on his investment and operations. Likewise, the lessor has an increased return on his work and care in raising the chicks to commercial size. Both the lessor and the lessee stand to get a larger monetary yield from diligent and nutritional feeding.

The objective of the regulations contained in the Act as they potentially embrace lessee is to protect the lessor, and others in like position, against imposition and from being cheated or defrauded by design of lessee and of others with similar business activities. It is agreed that the United States Department of Agriculture regularly inspects the chickens as they are processed in preparation for sale to the public.

The contract between the parties is reasonably calculated to inspire diligence on the part of the lessor in feeding and caring for the chickens properly, and at the same time to induce the lessee to furnish nutritional feed that tends to increase the weight of the chickens per unit of feed.

The chances of the lessor being deceived, cheated, defrauded, or imposed on under the contractual arrangement here under consideration are extremely remote and negligible, or perhaps we should say they are non-existent. The lessee at the same time would of necessity defraud or cheat himself. More money to the perpetrator is usually the basis for fraud or deceit. Here such basis is non-existent.

The legislature provided an exemption to complainant and to others in purchasing grain or other materials and in grinding or mixing the same for his own poultry that he raises except under lease or contract. In providing this exemption, the legislature must have assumed that the exemptioner would have no motive to cheat or defraud himself. Would the owner under a contractual arrangement here under consideration follow a different course? We think not.

In the case of City Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L.R.A. 209, we quoted with approval from the case of Lawton v. Steele, 152 U. S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385,

wherein the Supreme Court of the United States declared that " 'the Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.' " See also: Leary v. Adams, 226 Ala. 472, 147 So. 391.

We think application of Act No. 583, supra, to the business activities of appellee here considered would arbitrarily interfere with such business, and would impose unusual and unnecessary restrictions upon his occupation. Such application would be contrary to §§ 1 and 35 of our Constitution.

The decree of the trial court is due to be and is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN, COLEMAN and HARWOOD, JJ., concur.

MERRILL, J., dissenting.

MERRILL, Justice (dissenting):

It is well settled that the Legislature has the power to enact any law not forbidden by the State Constitution and not in conflict with the Federal Constitution, and that the burden is on him who assails the law to establish the unconstitutionality of same beyond a reasonable doubt. State v. Atlantic Coast Line R. Co., 225 Ala. 648, 144 So. 811; Gray v. Johnson, 235 Ala. 405, 179 So. 221; Norton v. Lusk, 248 Ala. 110, 26 So.2d 849.

The Supreme Court of Virginia said in Reynolds v. Milk Commission of Virginia, 163 Va. 957, 179 S.E. 507:

"Courts ought not to pronounce any act of the Legislature unconstitutional unless it is plainly so—so plain as to

leave no doubt on the subject. To doubt is to affirm its constitutionality. There is no such thing as a doubtful constitutional statute. Every presumption is in its favor, and there is no stronger presumption known to the law."

Legislative classifications in tax matters are presumably valid, and the burden is on the challenger to prove that such classification does not rest on a reasonable basis; and tax statutes are not to be deemed unconstitutional or invalid if any state of facts can be conceived which would support the subject of the tax. Haden v. Watson, 270 Ala. 277, 117 So.2d 694, and cases there cited.

The lower court held, and as I understand the majority opinion, this court concedes that the act, prior to the amendment under consideration here, "was a proper function of the police power of the State." It is therefore conceded that the police power of the State allows an inspection of feed *sold* by a manufacturer or mixer of poultry feed to a farmer.

Here, the feed is mixed and furnished by contract to the farmer who is expending his work and labor and using his housing facilities. This makes him just as interested in receiving good quality feeds suitable for efficient and profitable production of poultry as if he had purchased the feed because his entire compensation is dependent upon the quality of the feed.

Appellee contends that the exemption in the statute obviates the inspection because he owns the chicks and he mixes the feed which he furnishes the farmer with which to feed the chicks.

It appears that the obvious intent of the Legislature in amending Act No. 583 was still to exempt a farmer who mixes his own feed to feed his own chickens. If this feed is bad or of poor nutritional value, no one else is hurt. But if a mixer or manufacturer of feed is furnishing that feed to another under a contractual agreement that only that feed will be fed to the chicks and the latter's

monetary return is dependent upon the quality of the feed, then a different category is created from the one where the mixer uses his own feed to feed his own chickens and no one else is involved. I think there are two separate and distinct classifications —one, a farmer feeding his own poultry with feed he mixes, and, two, a mixer of feed who furnishes it to another pursuant to contract.

I have already stated the principle that tax statutes are not to be deemed unconstitutional if any set of facts can be conceived which would support the tax. I think the following shows the need for the inspection and the tax to pay for the inspection under the amended statute.

The feed company and the contract farmer are both interested in the poultry growing well and fast as pointed out in the majority opinion. But the feed company accidently mixes up a large batch of feed containing a poison and supplies it to the farmer. The chicks sicken and die and all his work and labor is for naught because he used impure food, when an inspection would have prevented his loss. It is no answer to his loss to say that the feed company also lost. And suppose the feed company supplied fifty or a hundred farmers with the same impure feed. The loss to farmers of this State would be multiplied.

An inspection of the feed for the protection of the farmer seems all the more necessary in view of the stipulation in the contrac_ before us that the farmer "does hereby waive and relinquish any interest, right or benefit he has or might have in the type, quality, or quantity of feed delivered by the Lessee (the feed mixer) for feeding of said poultry."

It is worthy of note that the largest poultry producing state in the nation, Georgia, amended its law in 1956, the amendment providing in part as follows:

" * * * and provided further, that any person, firm or corporation producing or purchasing his or its own grain or other material and grinding or mixing same with a concentrated commercial feeding stuff as a supplement or base for the purpose of feeding his or its own livestock, domestic animals or poultry, shall not be subject to the inspection tax provided herein for mixtures of feeding stuff. Provided, that such exemption shall not be applicable to feed furnished, supplied or used for the growing or feeding of livestock, domestic animals or poultry under contract, lease or agreement." Act No. 183, amending Code Chapter 42–205, Georgia Laws, 1956, Vol. 1, pages 293–297.

Not only is the Georgia statute practically the same as ours, but the amount of the inspection tax is the same.

I am not convinced beyond a reasonable doubt that the statute is unconstitutional and I would reverse the decree of the trial court. I, therefore, dissent.