The Indian Rivers Community Health Center (Indian Rivers) appeals from a decree entered in a declaratory judgment action. The trial court held various sections of the zoning ordinance of the City of Tuscaloosa constitutional and also held that they had been properly applied in this case. We affirm.
Indian Rivers operates Andante House, a transitional home for patients of Bryce Hospital who are released on a "trial basis." The home is presently located on Twelfth Avenue in Tuscaloosa. Indian Rivers would like to move it into two houses on Reed Street, also in Tuscaloosa. Adrian *Page 896 
Straley, planning director of the City of Tuscaloosa, informed Indian Rivers that it would be necessary to obtain a "special exception" from the Board of Adjustment (Board) to relocate on Reed Street. Indian Rivers filed its petition and, following a hearing, the Board granted the request. The special exception was granted for a "personal care home for adults" and was subject to conditions outlined by the Board regarding the screening of residents and programming.
Residents of the neighborhood in which the proposed transitional home is to be located appealed the Board's decision. Subsequently, Indian Rivers filed a motion for declaratory judgment, requesting the court to declare the requirement to obtain a special exception to establish a transitional home violative of § 11-52-75, Ala. Code 1975, and the United States and Alabama Constitutions. The trial court severed the declaratory judgment issues from the appeal of the Board's decision and, following an ore tenus hearing in the declaratory judgment action, ruled in favor of the City. Indian Rivers appeals from this final judgment.
Indian Rivers argues that the City, through the Board, has applied the Tuscaloosa zoning regulations in a manner that unlawfully discriminates against persons with mental disorders. It claims that the Board has prohibited it from operating Andante House in an RMF-2 zone (multi-family), absent a special exception, but has allowed other persons who are not mentally ill, but otherwise similarly situated, to reside in this zone without restriction. Indian Rivers claims this is unequal and unlawful treatment in violation of the equal protection and due process provisions of the United States and Alabama Constitutions, and § 11-52-75, Ala. Code 1975, which is a codification of these provisions. It does not challenge the constitutionality of the zoning ordinance itself, but restricts its arguments to the constitutionality of the Board'sapplication of the ordinance.
Indian Rivers urges us to apply strict scrutiny when examining the Board's actions. It contends that this standard is proper because one of the appellants (Jane Doe) and all prospective residents of Andante House are members of a "suspect class." The class, if it exists, would consist of persons with mental disorders.
The Supreme Court of the United States has described the traits which characterize a suspect class. They include a history of disenfranchisement and stereotyping, and "an immutable characteristic determined solely by the accident of birth." Frontiero v. Richardson, 411 U.S. 677, 686,93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). The persons included in a suspect class cannot be differentiated from non-suspect classes on the bases of intelligence, physical ability or disability, or ability to perform and contribute to society. We find none of those traits evident in this group and hold that people with mental disorders are not a suspect class.
Furthermore, we can find no argument to support Indian Rivers' contention that requiring it to obtain a special exception to operate a home for the mentally disabled infringes upon the fundamental rights of that group. Roe v. Wade,410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
There being no involvement of a suspect class or fundamental right, this Court will not apply the "strict scrutiny" test to examine the ordinance and the Board's actions. The proper standard of review is the "substantial relationship" test;i.e., is the Board's action arbitrary and unreasonable, or is it authorized and substantially related to the maintenance of the public health, safety, morals, and general welfare. Villageof Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114,71 L.Ed. 303 (1926); Woodard v. City of Decatur, 431 So.2d 1173
(Ala. 1983); COME v. Chancy, 289 Ala. 555, 269 So.2d 88 (1972).
We begin by stating the objective of the Tuscaloosa zoning ordinance:
 "This Chapter is enacted for the following purposes: To promote the health, safety, morals, and general welfare of the inhabitants of Tuscaloosa by *Page 897 
lessening congestion in the streets, securing safety from fire, panic, and other dangers, providing adequate light and air, preventing the overcrowding of land, avoiding undue concentration of population, facilitating the adequate provisions of transportation, water, sewerage, schools, parks, and other public requirements, conserving the value of buildings, and encouraging the most appropriate use of land. . . .
 "It is recognized that a Zoning Ordinance, in addition to fulfilling the purposes set out in Section 35-2 above, should be related to a broad vision of the City's future, and should subserve carefully considered, cogently stated community development objectives."
Tuscaloosa, Alabama, Zoning Ordinance Art. 1, §§ 35-2, 35-3 (1972). This is in accord with § 11-52-72, Ala. Code 1975, which states the general purpose to be furthered by the zoning ordinance. It is also in accord with § 11-52-9, which describes a "comprehensive plan."
 "The plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the municipality and its environs which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity and general welfare as well as efficiency and economy in the process of development, including, among other things, adequate provision for traffic, the promotion of safety from fire and other dangers, adequate provision for light and air, the promotion of the healthful and convenient distribution of population, the promotion of good civic design and arrangement, wise and efficient expenditure of public funds and the adequate provision of public utilities and other public requirements."
The proposed site of the transitional home is in a zone designated as "RMF-2 Multi-Family District." This zone was created for the following purposes:
 "[T]o provide minimum standards for the use and redevelopment of certain areas in the vicinity of the University of Alabama characterized by high population density, an aging housing stock, and inadequate parking and open space. It is intended to encourage the consolidation and/or replatting of lots in such areas for apartments, townhouses, and two-family dwellings meeting modern standards."
Tuscaloosa, Alabama, Zoning Ordinance Art. 3, § 35-31 (f) (1972). Permitted uses in an RMF-2 district include single and multi-family dwellings, townhouses, apartments, fraternity and sorority houses, non-commercial parks, playground and recreational areas, public buildings of a governmental nature, public schools, churches, and convents.
Certain uses of property are obviously well suited for this type of zone and may be allowed without an extended review. These are the permitted uses listed above. However, there are some uses which may promote the goals of zoning regulations and the development of the City's plan, and be desirable under certain circumstances, but questionable under others. In these instances, some method of reviewing the potential usage of the property in the zone must exist to insure that the character of the neighborhood is preserved, and that the health, morals, and welfare of the residents are protected. The Board has the power, under § 11-52-80 (a), Ala. Code 1975, to hold hearings and to "make special exceptions to the terms of the ordinance in harmony with its general purposes and interests." The ordinance defines "special exception" as follows:
 "A use that would not be appropriate generally or without restriction throughout a zoning district but which, if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, morals, order, comfort, convenience, appearance, prosperity, or general welfare. The Board of Adjustment may permit such uses in a zoning district as special exceptions if specific provision for such special exception is made in this Chapter." *Page 898 
Tuscaloosa, Alabama, Zoning Ordinance Art. 1, § 35-5 (47) (1972).
The ordinance and the provisions for permitted uses and special exceptions are aimed at controlling the uses of the premises within each zone, not the types of people who may inhabit them. Transitional homes are not a permitted use in an RMF-2 zone. They are distinguishable from all other uses listed as "permitted uses," because the inhabitants of these homes generally require constant supervision and programming. The homes are the residences for a high concentration of people requiring some assistance and monitoring. Adrian Straley testified that any transitional or personal care home, whether it be for mentally ill adults, alcoholics, drug addicts, or the aged, would be required to obtain a special exception to operate in an RMF-2 zone. Tuscaloosa, Alabama, Zoning Ordinance Art. 3 (1972).
This is the only way the City can control development of this zone in line with the comprehensive plan and ordinance objectives. By requiring a special exception for the operation of all transitional homes in this zone, the Board, acting for the City, has the opportunity to impose conditions on the screening and programming of prospective residents to insure that someone who may present a danger or be a nuisance to the other residents is not accepted to the home. It can also determine, for example, whether the home will require more than the normal amount of public and private services, such as police, ambulance, food delivery, laundry, and transportation. All these services would add to the traffic and congestion in the streets and ultimately affect the character and safety of the neighborhood.
We are mindful that Andante House may operate in a manner similar to the permitted uses in this zone and that its residents may behave no differently than their neighbors. This Court, in Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933), discussed Village of Euclid v. Ambler Realty, supra, and said:
 "In that case, the exclusion from the residential district was in general terms of all industrial establishments, and it was observed that such a general provision may exclude, along with the rest, industries which are neither offensive nor dangerous. But the court said that `this is no more than happens in respect of many practice-forbidding laws which this court has upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. * * * The inclusion of a reasonable margin, to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class.' It cannot be said that the ordinance in this respect `passes the bounds of reason and assumes the character of a merely arbitrary fiat.'"
Leary v. Adams, 226 Ala. at 474, 147 So. at 393.
Such may be the case here. If, in fact, the use of the two dwellings in question for Andante House will not cause harm to the general character of the neighborhood nor endanger the public health, morals, and welfare, then granting the special exception would be warranted. If, on the other hand, this use would be detrimental to the neighborhood and work against the objectives of the ordinance, the City may exclude it from this zone as a proper exercise of its police power. This should not be interpreted as a ruling upon the merits of Indian Rivers' petition for a special exception, which is the subject of a separate appeal pending in the Circuit Court of Tuscaloosa County. *Page 899 
We hold that the Board was not only authorized to act as it did, but in doing so, did not discriminate unlawfully against persons who are mentally disordered. Its actions, as dictated by the state enabling statute and the zoning ordinance, were related substantially to the achievement of statutorily mandated objectives.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES and SHORES, JJ., concur.