159 So. 203

### CITY OF BIRMINGHAM v. LEO A. SELTZER, Inc.

#### 6 Div. 680.

Supreme Court of Alabama.

Jan. 24, 1935.

Rehearing Denied Feb. 21, 1935.

W. J. Wynn, Leigh M. Clark, and James
H. Willis, all of Birmingham, for appellant.

Horace C. Wilkinson, of Birmingham, for appellee.

PER CURIAM.

Bill in equity by the appellee corporation to enjoin the city of Birmingham from the enforcement of certain ordinances, especially No. 82–F, upon the idea that the enforcement thereof would operate as an unwarranted interference with the appellee's property or business rights.

It is well settled that a court of equity may enjoin the enforcement of an unreasonable or invalid ordinance when the enforcement of same would interfere with the conduct of business or other property rights. Franklin Social Club v. Town of Phil Campbell, 204 Ala. 259, 85 So. 527; Walker v. City of Birmingham, 216 Ala. 206, 112 So. 823.

The trial judge, before issuing the injunction, set the matter down for hearing, as provided by section 8304 of the Code of 1923, and heard evidence pro and con by affidavits and the examination of many witnesses ore tenus. It is insisted by appellant's counsel that as section 8305 of the Code provides affidavits as evidence upon such hearing this method is exclusive and forbids other methods of proof. We cannot agree to this contention, and think that said section merely permits proof by affidavits and does not exclude other methods of producing and considering legal evidence. The case of Jones v. Jefferson County, 203 Ala. 137, 82 So. 167, does not hold to the contrary. It appears there that proof was made by affidavits, as provided by

the present section 8305 of the Code of 1923; but it was not held or intimated that this method of proof was exclusive.

Ordinance No. 82–F reads as follows:

"An Ordinance to Amend Section 5511½ of the General Code of the City of Birmingham of 1930.

"Be It Ordained by the Commission of the City of Birmingham that Section 5511½ of the General Code of the City of Birmingham of 1930, be, and the same hereby is, amended so as to read as follows:

"Section 5511½. Endurance Contests: It shall be unlawful for any person to engage in any test of endurance in tree or pole sitting, or in any exhibition of wire walking or building climbing in view of any public highway, and it shall also be unlawful for any person, firm or corporation to conduct, or engage or participate in any test or contest of walking or dancing, by whatsoever name called, which shall endure either continuously or intermittently for a period of more than twenty-four hours.

"Approved February 2, 1934."

The injunction sought is to prohibit the city from enforcing that ordinance to the extent that it applies to an amusement which is called a "Walkathon."

This is a contest of physical endurance by the participants walking in a hall, extending over a period of weeks or months, subject to the observation and amusement of spectators who pay a fee for admission. It is not necessary to explain in detail the regulations which this complainant has put into effect in the conduct of that entertainment. It appears that complainant has taken much pains and care to eliminate all objectionable features which may be incident to that sort of contest. And if the question before us were whether this particular enterprise, as thus conducted, is a "nuisance," as defined by our statute (section 9271, Code), we would accord the finding of the trial judge the credit which it is due when he has before him witnesses who testify in his presence. So that for the sake of this discussion, we concede the existence of the facts as complainant contends in so far as there is such evidence to support them. With that understanding, we will treat the question as one where there is not shown to exist a nuisance in fact.

■ The question is the extent of the legislative power of the city. The statute has used very broad terms in conferring that power in respect to places of amusement. It is not limited in its language. Section 2164, Code. But though not thus limited, its pow-

er is confined within constitutional limits, so that a citizen shall not be deprived of his rights without due process. Subject to such constitutional limits, cities are by law duly vested with a discretion to determine whether any certain form of amusement is so deleterious to public morals, health, or safety as that it should be prohibited or regulated by such restrictions as may minimize its objectionable features. State ex rel. Falkner v. Armstrong, 217 Ala. 564, 117 So. 187; White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84.

■ But if a city undertakes to declare that a certain form of amusement is deleterious to the public welfare, when it has none of the elements of a nuisance, and has no capacity or tendency to become such, the act of the city in thus ordaining exceeds its power, for it thereby trespasses upon the constitutional rights of its citizens. First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L. R. A. (N. S.) 522; White v. Luquire Funeral Home, supra.

■ But a city has the right to prohibit an enterprise entirely, or to limit it to certain zones, when, as thus located, it bears some substantial relation to public health, safety, or morals. Leary v. Adams, 226 Ala. 472, 147 So. 391.

■■ When the city passes an ordinance thus prohibiting or limiting an enterprise, and the question arises as to whether it should be enforced as to a particular person conducting or proposing to conduct such a business, the question is not controlled by the manner in which that particular person is conducting or will conduct his business, nor whether the business is a nuisance per se, but whether it may be, and often is, so conducted as to be a nuisance or deleterious to the public welfare. The decision of that question, as we have shown, is within the discretion and judgment of the lawmakers, provided it must not be arbitrarily exercised. Whether so exercised is the function of the judiciary. If so, it exceeds the constitutional rights of the citizens. So that our only concern, as expressed in the language of the various authorities, is to determine if the enterprise has the capacity and tendency to injure the public health, morals, or safety, and its prohibition has some substantial relation to the protection of the public welfare.

■■ It is not for us to determine whether complainant's business as conducted is thus conducive, but whether the business as a whole has such tendency. We must also emphasize the fact that every reasonable pre-

sъmption must be indulged to support the exercise by the city of its discretionary power. It may be that the city has found from experience that such form of amusement has been so conducted as that ordinary regulation does not eliminate its evil effects, and cannot do so when the operator is not willing to exercise the full measure of his duty in that respect. Who can say that such business has no evil tendencies when conducted by such people? If reasonable men may fairly determine such to be the fact, or if such men honestly differ in their conclusions as to such effect, the court cannot say that the exercise of the discretion vested in the city is arbitrary, and invades constitutional rights. The authorities are sufficiently cited and discussed in Leary v. Adams, supra, and the principles there considered have application here.

We think that the order of the court granting a temporary injunction did not duly consider the principles which we have stated. It is therefore reversed and the injunction is dissolved.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.