708 So.2d 129 (1997)
AMERICAN PETROLEUM EQUIPMENT AND CONSTRUCTION, INC., et al.
v.
Della K. FANCHER, et al.
Della K. FANCHER, et al.
v.
AMERICAN PETROLEUM EQUIPMENT AND CONSTRUCTION, INC., et al.
CITY OF BIRMINGHAM
v.
Della K. FANCHER, et al.
1951603, 1951648 and 1951650.
Supreme Court of Alabama.
September 19, 1997.
Rehearing Denied December 19, 1997.
*130 Demetrius C. Newton, Rowena Teague, and Michael M. Fliegel, city attys. office, Birmingham; and John D. Clements, F. A. Flowers III, and Mark M. Lawson of Burr & Forman, for the City of Birmingham and American Petroleum Equipment and Construction, Inc.
Michael C. Quillen, Frank C. Galloway, Jr., and Helen C. Foster of Walston, Stabler, Wells, Anderson & Bains, Birmingham, for Della K. Fancher, et al.
PER CURIAM.
These three appeals arise from a zoning case concerning a 4½acre tract of land located in Birmingham on U.S. Highway 280, a quarter mile north of the U.S. 280/I-459 interchange. The tract was rezoned by the Birmingham City Council to allow development of a hotel and service station. The trial court held the rezoning to be arbitrary and capricious, and therefore null and void. We reverse and remand.
On January 17, 1995, the Birmingham City Council passed Ordinance No. 1538-G, which rezoned this tract from "Contingency Office-Institutional District" ("C O-I") to "General Business District" ("B-2"). Della K. Fancher, Dirk Thomas, Mark Gamble, and J. Terry Bethea, homeowners and residents of the Cahaba Heights neighborhood, filed this action, alleging that the rezoning ordinance was arbitrary and capricious and not reasonably related to the protection of the public health, safety, morals, general welfare, and general conscience of the community. They sued the City of Birmingham; its mayor, Richard Arrington, in his official capacity; Aldrich *131 Gunn, William Bell, E.L. Blankenship, Antris Hinton, Roosevelt Bell, and Linda Coleman, in their official capacities as members of the City Council; and American Petroleum Equipment and Construction, Inc., the corporation that had applied for the rezoning. The trial court held that the rezoning was arbitrary and capricious; ruled that Ordinance 1538-G was therefore null and void; and reinstated the original classification. American Petroleum Equipment and Construction, Inc., and the Birmingham City Council appealed, primarily arguing that the trial court erred in holding that the City Council's actions in adopting the ordinance were arbitrary and capricious. The plaintiffs cross-appealed, claiming that the trial court erred in not awarding them attorney fees.
It is settled law that the Alabama Legislature has delegated to municipal legislative bodies, such as city councils, the power and authority to enact zoning ordinances. Section 11-52-76, Ala.Code 1976, provides that "[t]he legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced." The power to amend, supplement, or change zoning ordinances "as may be necessary" from "time to time" is also delegated to municipal legislative bodies. Id. See BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028 (Ala. 1990), citing Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
In Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala.1989), this Court discussed the law applicable to a court's review of a city's action in zoning cases, stating that "[w]hen a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted." 548 So.2d at 143. The restrictions on this Court's review of the validity of a zoning ordinance have been explained as follows:
"`Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
"`In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or ... plainly contrary to the zoning laws.'"
Homewood Citizens Association, 548 So.2d at 143 (quoting 82 Am.Jur.2d Zoning and Planning § 338 (1976)). The Court further stated in Homewood Citizens Association that "[t]he burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body." 548 So.2d at 144.
The "fairly debatable" rule concerns the application of a zoning classification to a specific parcel of property. Byrd Companies v. Jefferson County, 445 So.2d 239, 247 (Ala.1983). "`[I]f the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts.'" Id., quoting Davis v. Sails, 318 So.2d 214 (Fla.Dist.Ct.App.1975). Thus, if the zoning ordinance is "subject to controversy or contention" or "open to question or dispute," it is "fairly debatable" and should not be disturbed by the courts. Aldridge v. Grund, 293 Ala. 333, 342, 302 So.2d 847, 854 (1974); Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, 628 (1969).
*132 The City Council contends that its action in rezoning the property was within its sound legislative discretion as the governing body of the city and that the adoption of the zoning ordinance was a "fairly debatable" question upon which reasonable differences might exist in view of all of the circumstances. The City Council argues that a court should not substitute its judgment for that of a legislative body acting in its capacity as authorized by state law. City of Birmingham v. Norris, 374 So.2d 854 (Ala.1979).
The plaintiffs argue that in reviewing the holding of the trial court this court should apply the ore tenus rule. Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987); Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala. 1978). In addition, the ore tenus presumption of correctness has no application to a trial court's conclusions on questions of law. Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994); Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).
Because the adoption of an ordinance is a legislative function, the courts must apply a highly deferential standard in zoning cases. City of Mobile v. Karagan, 476 So.2d 60, 63 (Ala.1985). This Court has said:
"`[I]f the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity. Leary v. Adams, 226 Ala. 472, [147] So. 391 [(1933)]; Episcopal Foundation of Jefferson County v. Williams, [281 Ala. 363, 202 So.2d 726 (1967)].'"
City of Birmingham v. Norris, supra, 374 So.2d at 856 (quoting Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388 (1968)).
The tract in question is bounded on the west by Cahaba River Road, and on the south by an Alabama Power Company right-of-way and then by BellSouth's Operations Center. It is bounded on the north by a residential area, and on the east by the Summit development, a 153-acre mixed-use development that will include a full-service hotel and a shopping center. Approximately 300 feet of the tract fronts U.S. 280. When this site was annexed into the City of Birmingham in 1985, it was zoned "R-1" ("Residential/Single-family"). In 1987, the City Council rezoned the property from "R-1" to "O-I" ("Office-Institutional"); however, an office development on such a small tract did not prove to be commercially feasible. Still undeveloped, the site was rezoned in 1991, in conjunction with an interim land use plan for the Cahaba-Lake Purdy area to "C O-I" or "Contingency Office-Institutional." The City Council voted to rezone the property from "C O-I" to "B-2" ("General Business District") by the adoption of City of Birmingham Ordinance No. 1538-G.
The evidence presented during six days of testimony concerned the extensive commercial development on U.S. 280, as well as the plans for this particular tract. There was evidence that U.S. 280 has a daily traffic flow of approximately 78,000 vehicles and that at times more than 4,000 vehicles per hour pass this tract. The State of Alabama had recently widened U.S. 280 to six lanes to accommodate the large volume of traffic.[1] There is commercial development on U.S. 280, both north and south of this tract, including the *133 new 153-acre Summit development, located across U.S. 280 from the property. Despite all the development, there was testimony that there is still a need for additional hotel rooms and that there are no service stations on U.S. 280 between downtown Birmingham and the Inverness areas, which lies beyond this tract. A planning expert and four developers all testified that it is no longer practical to develop office buildings on the tract.
The trial judge indicated that he gave little, if any, weight to evidence that was presented to the court but was not presented to the City Council at its hearing; however, such evidence is relevant and admissible under this Court's decision in City of Birmingham v. Norris, 374 So.2d 854 (Ala.1979). This evidence includes the fact that the development plans for the property have been made final. There will be a hotel, constructed of brick and siding. Guests will enter their rooms from the interior of the hotel, thereby reducing noise and traffic. The hotel swimming pool will be located on the south side, to screen the pool from adjoining residences. A service station will be located at the corner most distant from adjoining residential properties. Detailed and attractive landscaping will buffer the site from adjoining properties; directional lighting will be canopied downward. Residences will be separated from the developed tract, not only by a horizontal distance of approximately 70 feet, but also by a vertical distance of approximately 50 feet covered by vegetation. Sunset Carson testified at trial that the buffer will "do the job."
The developers and owners have agreed to a number of restrictive covenants by which they forgo certain types of uses of the property that would otherwise be permitted under both B-1 and B-2 zoning. The covenants require that the property be developed in accordance with the recommendations of the City of Birmingham's Planning Department, requiring a buffer and landscaping.
The testimony showed that circumstances in this case are very similar to those in BP Oil Co. v. Jefferson County, 571 So.2d 1026 (Ala.1990). Evidence in BP Oil indicated "that dramatic changes in the neighborhood made the proposed zoning appropriate, inevitable and imminent, and that benefits to the community would result from the proposed rezoning." Id. at 1029. We hold that the application of Ordinance No. 1538-G was "fairly debatable"; that the ordinance has a reasonable relationship to the health, safety, morals, or general welfare of the community; and that the trial court erred in finding the rezoning by the City Council to be arbitrary and capricious and in declaring the ordinance "null and void." Homewood Citizens Association, supra; BP Oil Co. v. Jefferson County, supra; City of Birmingham v. Norris, 374 So.2d 854 (Ala.1979); City of Gadsden v. Downs, 412 So.2d 267 (Ala.1982); City of Birmingham v. Leo A. Seltzer, Inc., 229 Ala. 675, 159 So. 203 (1935); Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933).
For the reasons stated above, the judgment of the trial court is reversed and the cause is remanded for the trial court to vacate that judgment and to enter a judgment approving Ordinance No. 1538-G. The plaintiff's cross-appeal, seeking to reverse the trial court's denial of attorney fees, is rendered moot by this decision and need not be addressed. Chisolm v. Crook, 272 Ala. 192, 130 So.2d 191 (1961).
REVERSED AND REMANDED.
ALMON, SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
MADDOX, Justice (dissenting).
I must respectfully disagree with the majority. In finding that the actions of the Council were arbitrary and capricious, the trial court, on April 4, 1996, issued the following order:
"This cause came on to be heard upon testimony taken and other evidence presented at an oral hearing, without a jury. The case is an appeal from a decision of the City Council of the City of Birmingham (`City Council') to change the zoning of a parcel of land from `C' O-I (Contingency Office and Institutional District) to B-2 (General Business District). The parcel is *134 a 6 ½ acre tract lying southwest of U.S. Highway 280 and in between the South Central Bell Offices and the Dolly Ridge Acres Subdivision (the `Property'). The Property is more specifically described in Plaintiffs' Exhibit 3.
"The Property is in the City of Birmingham, the Plaintiffs' property which adjoins the Property on the north is in the City of Mountain Brook and some of the property which adjoins the Property on the west is in Mountain Brook and some is in Jefferson County.
"The Property is bounded on the south by an Alabama Power Company right-of-way and then by property owned by South Central Bell which is in Birmingham and which is zoned `C' O-I. South of the South Central Bell Property is Interstate I-459.
"The Plaintiffs' property to the north of the Property ... is zoned R-A (single-family residential) and north of that the property is in Jefferson County and zoned E-2 (an estate district for single-family residential).
"To the west of the Property, the property in Jefferson County is zoned E-1 (an estate district for single-family residential) and the property in Mountain Brook is zoned R-1 (single-family residential). West of those tracts is the Cahaba River Road and then additional tracts zoned R-A in Mountain Brook and E-1 in Jefferson County.
"The Property is bounded on the east by U.S. 280 which at that location is a six (6) lane divided highway. Most of the property to the east of U.S. 280 which is across from the property is in Jefferson County and is zoned R-1 (single-family residential). A small portion of the property east of U.S. 280 across from the Property is in Birmingham and is zoned `C' B-2 or Contingency General Business District. East of the property across U.S. 280 which is zoned R-1 is the proposed multi-family residential area of the Summit development.
"The property to the south of the Property is used for offices. The property to the north of the Property is used for single-family residences. The property to the west of the Property is used for single-family residences, in fact there is one single-family residence on the Property itself, although the owner has ceased to lease it while the zoning change has been pending. The property to the east is first the six (6) lane U.S. 280 and then is used for single-family residences except for the small section at the southeastern tip of the property.
"At the time the Property was annexed into Birmingham, or soon thereafter, it was zoned R-1 for single residences. At that time the Property was made up of two tracts, each with an occupied single-family residence. In December 1987, the zoning classification was changed from R-1 to O-I.
"In January 1991, the Birmingham Planning Commission updated or revised its Land Use Plan for the City of Birmingham. The map of the Cahaba Lake Purdy Interim Land Use Plan shows the proposed use of the property as `Office.'
"Following the adoption of a general land use plan for the area, the zoning classification was changed from O-I to `C' O-I. It was stated that: `The planning staff considered O-I as a limited use commercial zone which would encourage moderately dense use of buildings and modest vehicular traffic, therefore being compatible with the nearby existing and contemplated land uses. The "C" designation gives the planning staff development plan control in order to review and coordinate building size and location, vehicular access drives, and buffers to lessen development impact.'
"Following the designation of the Property as `C' O-I, on three separate occasions proposed purchasers of the Property have attempted to change the zoning classification to B-2. Each time the Zoning Advisory Committee (`ZAC') of the City of Birmingham and its staff recommended against the rezoning. Additionally, the Planning and Engineering Department of the City of Birmingham recommended that the Property not be rezoned. The attempts to rezone the Property in 1992 and 1993 were not successful. In late 1994, the *135 third attempt to rezone the property was made and the ZAC and Planning and Engineering Department again recommended against rezoning. The staff report went on to recommend, that, if the Property were rezoned, that it be with a `C' or `Q' designation so that the City through its staff could retain some control over the uses authorized and the development plans.
"With the property immediately to the south being developed and used for office purposes, and with the Property being suitable for the construction of office buildings, it is the opinion of the Court that the Property is suitable for development and use under the `C' O-I classification.
"Prior to the hearing on the application for rezoning in January 1995, a group of the proposed developers met with Mayor Richard Arrington (`Arrington'). Following the meeting, Arrington sent a memorandum to the members of the Birmingham City Council in which he first noted that there were no Birmingham City residents near the site and then stated his support for the rezoning. Arrington attached certain information to his memorandum which had been supplied to him by the developers. The evidence presented to the court shows that part of the information contained in the attachment was incorrect and another part, if not actually incorrect, depending upon the interpretation given it, was certainly misleading.
"In January 1995, the City Council approved the application for rezoning and not only did not follow its staff's recommendations as to the rezoning, but also did not give the zoning a `C' or `Q' designation to provide some control over the development of the Property. The zoning was thus changed from a Contingency O-I use to more intensive B-2 zoning classification with no contingency control or qualification attached to it. Even the Defendant's own experts at trial testified that not all of the uses permitted under the B-2 zoning classification were appropriate for use on the Property. There were no experts testifying or speaking before the City Council in favor of the rezoning. The only experts to speak before the City Council were its own staff members and they opposed the rezoning.
"The evidence in this case establishes that the normal planning and zoning practice is to move from the more intensive land uses, through transitional or less intensive land use into the residential areas, perhaps even going through multi-family residential areas before reaching the single family residential areas. An example of the transitional area is shown by the uses of the property in the Summit development which is across U.S. 280 to the south and east of the Property. (Defendants' Exhibits 2 and 32.)
"Between the time the City Council rezoned the Property B-2 and the hearing in court, the developers put together a development scheme which, if implemented, would, according to the Defendants' experts, be an appropriate use of the property. The plaintiffs' experts disagreed and they testified that even the Defendants' proposed development would not be an appropriate use of the Property. Of course, the fact experts testified on both sides of the issue does not mean that the issue is `fairly debatable.' [Jefferson County v. O'Rorke, 394 So.2d 937 (Ala. 1981).] Also, even though the Court is required to allow the Defendants to introduce the development plans which were not in existence or communicated to the City Council [City of Birmingham v. Norris, 374 So.2d 854 (Ala.1979)], such [evidence] does not change the fact that the City Council did not have any of the testimony or development plans before it to support its decision to rezone the property at the time it made the decision.
"The evidence all shows the land between I-459 and the Plaintiffs' property as a transition area between an interstate highway and single-family residences. The office development on the South Central Bell property is in conformance with normal zoning and land use practices in such a transition area. The City Council's action inserting the more intensive B-2 zone between `C' O-I zone and a single-family residential zone is contrary to both zoning and land use practices. It is also *136 contrary to the existing land use plan for the area. It is contrary to the recommendation of all the experts who spoke at the hearing on the rezoning application. By not even placing the `C' or `Q' designation on the B-2 zoning the City Council left the development of the Property up to the discretion of the developers as to all uses allowable inside the B-2 zoning classification.
"It is the opinion of the court that the decision of the City Council was not fairly debatable and was clearly arbitrary and capricious.
"It is, therefore, ORDERED, ADJUDGED AND DECREED by the Court as follows:
"ONE: Ordinance No. 1538-G of the City of Birmingham which amended the zoning map of the City of Birmingham to rezone the Property from `C' O-I (Offices and Institutional District) to B-2 (General Business District) is null and void.
"TWO: The zoning classification of the Property is `C' O-I (Office and Institutional District).
"THREE: At the close of the testimony in this case the Plaintiffs' attorney asked to be allowed to file a motion for attorneys' fees. Although attorneys' fees are not normally awarded in cases of this nature, counsel shall have 30 days from the date of this order to file a motion requesting the attorneys' fees and setting out the grounds he feels support such a request."
I realize that our review is quite restricted when determining the validity of a zoning ordinance; however, we must also be mindful that in considering the correctness of the judgment of the trial court in a nonjury case we apply the rule that (1) the trial court is the ultimate trier of fact and is free to weigh the evidence and the credibility of the witnesses; (2) the findings of fact made by the trial court are presumed to be correct, if supported by credible evidence; and (3) a judgment based on those findings will not be set aside unless it is clearly erroneous or palpably wrong or unjust. Hayden v. Bruno's, Inc., 588 So.2d 874, 875 (Ala.1991); see also O'Brien v. Westinghouse Electric Corp., 293 F.2d 1 (3d Cir.1961); Feaster v. American Liberty Insurance Co., 410 So.2d 399 (Ala.1982).
After reviewing the record and the briefs, along with the trial court's lengthy finding of facts and conclusions of law, I do not believe that the trial court erred in finding that the action of the Birmingham City Council in rezoning the subject property was "clearly arbitrary, capricious, [and] unreasonable, having no substantial relation to the public health, safety, or welfare, [and was] plainly contrary to the zoning laws [in existence at the time of its action]." Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala.1989) (quoting Am.Jur.2d Zoning and Planning § 338 (1976)). See also, BP Oil Co. v. Jefferson County, 571 So.2d 1026 (Ala.1990); City of Birmingham v. Norris, 374 So.2d 854 (Ala.1979); COME v. Chancy, 289 Ala. 555, 269 So.2d 88 (1972); Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1969); Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553 (1948); City of Birmingham v. Leo A. Seltzer, Inc., 229 Ala. 675, 159 So. 203 (1935); Leary v. Adams, 226 Ala. 472, 147 So. 391 (1933).
HOOPER, C.J., and SEE, J., concur.
NOTES
[1] Tom McGee, chief planner for the City of Birmingham, testified that the widening of U.S. 280 was a "significant" change that promoted commercial development in the area.