843 So.2d 116 (2002)
H.H.B., L.L.C.
v.
D & F, L.L.C.
D & F, L.L.C.
v.
H.H.B., L.L.C.
1001925 and 1002011.
Supreme Court of Alabama.
May 24, 2002.
Rehearing Applications Denied August 30, 2002.
J. Patrick Courtney III, Mobile; and Gordon G. Armstrong III, Mobile, for H.H.B., L.L.C.
William M. Lyon, Jr., of McFadden, Lyon & Rouse, L.L.C., Mobile; and Allan R. Chason of Chason & Chason, Bay Minette, for D & F, L.L.C.
*117 PER CURIAM.
H.H.B., L.L.C., appeals from the trial court's judgment reversing a zoning decision made by the Mobile City Council. D & F, L.L.C., cross-appeals from the trial court's ruling allowing H.H.B. to intervene in the case. We affirm the trial court's ruling as to H.H.B.'s intervention, but we reverse its judgment as to the zoning decision.

Factual Background and Procedural History
H.H.B., L.L.C., is a limited liability company, whose owners are accountants. D & F, L.L.C., is a limited liability company, whose owners are the principals of The Mitchell Company, a real-estate company, and other real-estate companies in Mobile. D & F owns a 1.7-acre corner parcel of property located at the intersection of Dauphin Street, North Florida Street, and Woodruff Street in Mobile ("the subject property"). The building in which H.H.B. is located is across North Florida Street from the subject property. All of the property in the immediate neighborhood is zoned, as defined in the zoning ordinance of the City of Mobile, R-1 (One-Family Residential Districts) or B-1 (Buffer Business Districts). D & F intends to build a 10,000-square-foot CVS retail discount store with 60 parking places on the subject property. In order to do so, however, D & F must have the zoning designation of the subject property changed to B-2 (Neighborhood Business Districts).
Woodruff Street is exclusively residential. Dauphin Street and North Florida Street are a mixture of residential areas and buffer-business areas. Buffer businesses are by definition those businesses in which permitted uses are uses of a semicommercial nature, such as professional offices and studios. The subject property previously consisted of eight lots, almost all of which have been zoned for the past 50 years as either R-1 or B-1. During the 1960s, a drugstore occupied the corner site for several years. Before D & F acquired the property, three residences and a building used as a real-estate office were situated on it. The subject property has since been cleared and all buildings removed.
In order to obtain a zoning change, an applicant must first obtain the approval of the Mobile City Planning Commission, followed by the approval of the Mobile City Council. D & F began its efforts to obtain B-2 zoning in 1999. It withdrew its first two applications after they were submitted to the planning commission, but before the city council considered the matter. D & F submitted its third application to the planning commission in August 2000. Between the filing of the second and third applications, D & F voluntarily incorporated numerous changes to its plans and restrictions on otherwise acceptable B-2 uses in an effort to accommodate the concerns of residents of the neighborhood. Those changes and restrictions included eliminating any use that could be made of the property under B-2 zoning except for a drugstore, designing a building that would be architecturally compatible with the neighborhood's surrounding buildings, not allowing the sale of beer and wine, not providing outside telephones, restricting dumpster pickups to daylight hours, and constructing a brick wall behind the store. Despite D & F's efforts, however, the planning commission's staff recommended to the commission, as it had with the first two applications, that it deny the third application. In spite of its staff's recommendation, the planning commission, in September 2000, voted 6-2 to recommend to the city council that it approve D & F's application to change the subject property's zoning designation to B-2. The planning commission's recommendation was *118 subject to the conditions and restrictions D & F had voluntarily attached to its application. The proposed amendment to the zoning ordinance to effectuate the zoning change for the subject property was presented to the city council in October 2000. Although the council members voted 4-3 to approve the amendment to the zoning ordinance, § 11-44C-28, Ala.Code 1975, requires a "supermajority" of the city council before an ordinance can be adopted, which meant that five votes were required in order for the amendment to the zoning ordinance to become effective;[1] the amendment was therefore denied. In December 2000, D & F appealed the denial of the zoning-ordinance amendment to the Mobile Circuit Court. D & F alleged that the city council's denial of its requested zoning change was "arbitrary and capricious," that it bore "no substantial relationship to the health, safety, morals, or general welfare of the City of Mobile," and that the decision not to rezone the subject property was "not fairly debatable" because D & F was not seeking to change the basic use of the property.
On June 6, 2001, the day before the case was set for trial, H.H.B. filed a motion to intervene as a party in the case pursuant to Rule 24, Ala. R. Civ. P. H.H.B. explained that it had not sought to intervene earlier because it did not know it had a right to do so and it did not know that a trial date had been set. D & F objected to the intervention. After a hearing, the trial court concluded that H.H.B., as a neighboring landowner, "had an absolute right to intervene under Rule 24." H.H.B. participated in the nonjury trial along with D & F and the City of Mobile.
At the conclusion of the bench trial, the trial court requested briefs from the parties. The court then entered a written order in which it concluded that the City's decision not to amend the zoning ordinance to change the zoning of the subject property to B-2 was arbitrary and capricious as applied to D & F, that keeping the subject property zoned R-1 and B-1 bore no substantial relationship to the health, safety, morals, or general welfare of the City, and that the City's decision not to rezone was not fairly debatable because D & F was not seeking to change the basic use of the property. Only H.H.B. appealed. The City is not a party to these appellate proceedings.

Intervention
We first address D & F's argument in its cross-appeal that the trial court erred when it allowed H.H.B. to intervene in this case. D & F contends that H.H.B. lacked standing to intervene, that its intervention therefore was not proper, and that it lacks standing to appeal.
D & F argues that H.H.B. lacked standing to intervene because, it says, there was no justiciable controversy at the time it entered into the case, and it now lacks standing to appeal because, D & F says, any previously arguable justiciable claim has been eliminated. D & F relies upon testimony by one of H.H.B.'s corporate representatives, Randy Jones, that the accounting firm did not oppose the subject property's being used as a drugstore, but opposed only the change in zoning to B-2, which would have permitted the property to be used in other ways. Jones stated:
"Q. Now, I take it that you object to this project.

*119 "A. We object not necessarily to the project, but to B-2 zoning.
"Q. So you don't object to the drugstore?
"A. No, sir, never have.
"Q. Okay. And there is nothing about a drugstore that really causes you any injury or problem?
"A. Not a real drugstore. But this is more likeI mean, the drugstores nowadays that CVS, Rite-Aid, and Walgreen seem to be putting up are like small little Wal-Marts. They sell everything.... [A]nd they are ten, fifteen thousand square-feet buildings. They're not like the small neighborhood drugstore was 20, 40 years ago.
"Q. Okay. So when you said you didn't object to a drugstore, you don't object to a small drugstore.
"A. In the neighborhood, no, sir."
Jones further testified that one of the reasons his firm had chosen to locate in the neighborhood was that it would be surrounded by B-1 businesses and that all of the corners of the intersection next door to it were zoned B-1. He stated that the primary reason his firm had decided to intervene was that its principals were concerned with the effect B-2 zoning would have on their property. He also testified that H.H.B. also intervened because it wanted to have the option to appeal the circuit court's decision if the City decided not to do so.
Although there is no express statutory authority that allows H.H.B. to intervene to object to a rezoning, H.H.B.'s concerns are analogous to a third party's right to intervene as an "aggrieved party" pursuant to § 11-52-80, Ala.Code 1975, in an appeal from a zoning board of adjustment's decision to grant a variance in zoning regulations. This Court discussed the issue of an aggrieved party's standing in Ex parte Steadham, 629 So.2d 647 (Ala. 1993):
"`In order for a party to have standing to challenge the decision of a zoning board of adjustment he must be a "party aggrieved." To establish himself as a "party aggrieved" he must present "proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value" of his own property.'"
629 So.2d at 648 (quoting Crowder v. Zoning Bd. of Adjustment, 406 So.2d 917, 918 (Ala.Civ.App.1981), quoting in part Cox v. Poer, 45 Ala.App. 295, 297, 229 So.2d 797, 799 (1969)). After reviewing Jones's testimony in light of the above principles, we conclude that H.H.B. presented enough evidence to show that rezoning the subject property to B-2 could have an adverse effect on H.H.B.'s property. Therefore, H.H.B. had standing to intervene in this case and has standing to appeal the circuit court's judgment.
D & F also argues, apart from the issue of standing, that the trial court should not have allowed H.H.B.'s intervention. In Root v. City of Mobile, 592 So.2d 1051, 1052-53 (Ala.1992), this Court discussed intervention pursuant to Rule 24:
"Generally a ruling on a motion to intervene is within the sound discretion of the trial court and will not be disturbed on appeal unless there is an abuse of discretion. Dearmon v. Dearmon, 492 So.2d 1004 (Ala.1986). See, also, Randolph County v. Thompson, 502 So.2d 357, 364 (Ala.1987), wherein this Court specifically noted that a trial court's ruling with respect to the timeliness of a motion to intervene is governed by an abuse-of-discretion standard:
"`Since the rule, itself, is silent concerning what constitutes a "timely application," *120 it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court. See Strousse v. Strousse, 56 Ala.App. 436, 322 So.2d 726 (1975). See also McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1072 (5th Cir.1970).'
"Therefore, the dispositive issue in this case is whether the trial court abused its discretion in denying the motion to intervene."
H.H.B. explained to the trial court that it did not intervene until the eve of trial because it did not know that it had a right to intervene and because it did not know that a trial date had been set in the case. In light of that explanation, and considering H.H.B.'s status as a landowner affected by the proposed rezoning, we cannot say that the trial court abused its discretion in permitting H.H.B. to intervene.

Zoning
Judicial review of municipal decisions regarding zoning ordinances is severely limited. In American Petroleum Equipment & Construction, Inc. v. Fancher, 708 So.2d 129 (Ala.1997), this Court discussed the standard of review that both the trial court and this Court must apply in reviewing those decisions.
"It is settled law that the Alabama Legislature has delegated to municipal legislative bodies, such as city councils, the power and authority to enact zoning ordinances. Section 11-52-76, Ala.Code [1975], provides that `[t]he legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced.' The power to amend, supplement, or change zoning ordinances `as may be necessary' from `time to time' is also delegated to municipal legislative bodies. Id. See BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028 (Ala.1990), citing Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
"In Homewood Citizens Association v. City of Homewood, 548 So.2d 142 (Ala.1989), this Court discussed the law applicable to a court's review of a city's action in zoning cases, stating that `[w]hen a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted.' 548 So.2d at 143. The restrictions on this Court's review of the validity of a zoning ordinance have been explained as follows:
"`"Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.

"`"In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, *121 or ... plainly contrary to the zoning laws."'

"Homewood Citizens Association, 548 So.2d at 143 (quoting 82 Am.Jur.2d Zoning and Planning § 338 (1976)). The Court further stated in Homewood Citizens Association that `[t]he burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body.' 548 So.2d at 144."
708 So.2d at 131 (emphasis added). The Court went on in American Petroleum to discuss the "fairly debatable" rule.
"The `fairly debatable' rule concerns the application of a zoning classification to a specific parcel of property. Byrd Companies v. Jefferson County, 445 So.2d 239, 247 (Ala.1983). `"[I]f the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts."' Id., quoting Davis v. Sails, 318 So.2d 214 (Fla.Dist.Ct.App. 1975). Thus, if the zoning ordinance is `subject to controversy or contention' or `open to question or dispute,' it is `fairly debatable' and should not be disturbed by the courts. Aldridge v. Grund, 293 Ala. 333, 342, 302 So.2d 847, 854 (1974); Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, 628 (1969)."
708 So.2d at 131 (emphasis added).
Under the highly deferential standard we must apply in this case, we cannot say that a rezoning request that received a split vote by the planning commission and a split vote by the city council was not reasonably subject to disagreement, that is, not fairly debatable. The trial court determined that the city council's decision was not fairly debatable because D & F was not seeking to change the basic use of the subject property from that of a drugstore. The record reflects, however, that the "drugstore" that occupied the site in the 1960s was of the "mom-and-pop" variety, not the large retail establishments that exist today. The record in this case demonstrates that the question whether to zone the subject property B-2 instead of B-1 was certainly "subject to controversy or contention" or "open to question or dispute," especially as it relates to a change from a small, family-run apothecary to a modern, broad-based retail facility such as is before the Court in this case. Therefore, the city council's decision should not be disturbed by a court. Because D & F's application to amend the zoning ordinance to designate the subject property as B-2 was fairly debatable, we hold that the city council's decision not to rezone the subject property had a reasonable relationship to the health, safety, morals, or general welfare of the community and that the trial court erred in finding its decision to deny rezoning to be arbitrary and capricious. We reverse the judgment, and remand the case for the trial court to enter an order affirming the decision of the city council.
1001925REVERSED AND REMANDED.
1002011AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the scholarly main opinion. I disagree in both the appeal and the cross-appeal.
D & F has cross-appealed the decision of the trial court allowing H.H.B. to intervene. *122 This ruling is critical in that H.H.B. is the only party which appealed the zoning decision by the trial court in favor of D & F. The City of Mobile did not appeal the zoning decision. Were this Court to reverse the ruling allowing H.H.B. to intervene, this Court would necessarily also dismiss the only appeal of the zoning decision in favor of D & F.
I respectfully submit that this Court should reverse the intervention ruling. The motion of H.H.B. was untimely and the excuse for untimeliness too insubstantial to fit within the parameters of the discretion of the trial court to allow intervention.
H.H.B., having successfully intervened, has appealed the zoning decision of the trial court in favor of D & F. I respectfully submit that we should affirm the zoning decision.
Section IX.A.1.b. of the Zoning Ordinance of the City of Mobile allows zoning amendments like the one sought by D & F if "[c]hanged or changing conditions in a particular area, or in the planning region generally, make a change in the ordinance necessary and desirable." In essence, the trial court, upon evidence ore tenus, found that the conditions in the particular area at issue in this case had changed to such an extent and in such a way that the application of the existing B-1 classification, as distinguished from the proposed B-2 classification, to the D & F property would no longer bear a substantial relationship to the health, safety, morals, or general welfare of the City, that no fairly debatable rationale supported the denial of the zoning amendment, and that, therefore, the denial constituted an impermissible arbitrary and capricious act by the City. The record contains superabundant evidence to support this finding.
The nature and extent of change in the particular area is a factual issue to be decided by the fact-finder. Fact-findings based on evidence ore tenus are not to "`be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence.'" Samek v. Sanders, 788 So.2d 872, 876 (Ala.2000) (quoting McCoy v. McCoy, 549 So.2d 53, 57 (Ala.1989)). The correctness of the fact-findings by the trial court in the case now before us is buttressed by the prior six-to-two vote of the planning commission in favor of recommending adoption of the zoning amendment sought by D & F and the four-to-three vote (albeit legally insufficient) of the city council in favor of adopting the amendment. Because the record supports a factual basis sufficient to support the legal conclusions by the trial court necessary to its judgment granting zoning relief to D & F, that judgment should be affirmed.
NOTES
[1] D & F criticizes § 11-44C-28 in its brief, pointing out that that Code section has been heavily criticized in Mobile and including with its brief a copy of a complaint filed by the president of the city council, seeking a declaratory judgment to determine whether the statute is constitutional. D & F elected not to challenge the constitutionality of the ordinance in this case, however; therefore, that question is not before us.